[Cite as *State v. Sturgeon*, 2013-Ohio-1389.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                     CASE NO.  9-12-39

      v.

MICHELLE STURGEON,                   O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Marion Municipal Court
Trial Court No. CRB113301

Judgment Affirmed

Date of Decision:  April 8, 2013

APPEARANCES:

    *Jeff Ratliff* for Appellant

    *Steven E. Chaffin*  for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Michelle L. Sturgeon ("Sturgeon"), appeals the June 20, 2012 judgment of the Marion Municipal Court journalizing her conviction by a jury for theft.

{¶2} On November 18, 2011, Heather Todd, an "Asset Protection Associate" with Wal-Mart security, was reviewing the security cameras when she noticed Sturgeon exhibiting suspicious behavior in the self-checkout line. Heather observed Sturgeon had three belts in her possession; one belt had a clearance sticker on it and the other two belts did not. Heather saw Sturgeon scan the clearance belt twice and set it aside. She then observed Sturgeon place the two regular-priced belts in a shopping bag. Heather decided to walk onto the floor to get a closer view of Sturgeon's activities.

{¶3} There, Heather observed Sturgeon's mother standing next to Sturgeon in the self-checkout line with a cart full of bagged groceries. Sturgeon had a second cart in her possession which contained several unbagged items. Heather observed Sturgeon scan a few of the items and complete the transaction. However, Heather noticed that Sturgeon did not scan several items in the cart, including an eight-pack of Mtn Dew, a 24-pack of water, a large container of Hawaiian Punch, a turkey, a bottle of Excedrin, Dulcolax tablets, and a small container of ground sage. Heather watched Sturgeon pay cash for the scanned items and place the

items into bags. The unscanned items remained in Sturgeon's cart and were not bagged. Heather observed Sturgeon take the unscanned eight-pack of Mtn. Dew and place it in the other cart.

{¶4} When the two women pushed the carts past the point of sale, Heather and another Wal-Mart security associate confronted Sturgeon and her mother and asked to see their receipts, which both women produced. After reviewing the receipts, it became apparent to Heather that the bagged items in the second cart, with the exception of the unscanned Mtn. Dew, had been purchased in a prior transaction in a cashier's checkout line. However, the unbagged items Heather observed in Sturgeon's cart in the self-checkout line were not listed on the receipts. Heather also discovered that the clearance belt Sturgeon scanned twice rang up as $3.00; however the belts she placed into her shopping bag rang up as $10.00 apiece.

{¶5} Sturgeon and her mother were taken to the Wal-Mart security office where law enforcement was notified. Heather determined that the value of the unscanned items in Sturgeon's cart was $34.47, and that the difference between the values of the clearance belt that Sturgeon scanned twice and the ones she placed in her shopping bag was $14.00.

{¶6} Sturgeon was subsequently charged with theft, in violation of R.C. 2913.02, and pleaded not guilty to the charge.

{¶7} On June 20, 2012, a jury trial was held. Several witnesses testified for the prosecution, including Heather, a second Wal-Mart Asset Protection Associate, and the Wal-Mart cashier who rang up the bagged items contained in the other cart. Sturgeon and her mother testified in Sturgeon's defense. Sturgeon maintained that the entire incident was an accident and that she mistakenly believed the items in her cart had been purchased in the prior transaction in the cashier's checkout line. Sturgeon also maintained that the belts she placed into a shopping bag were on clearance, but did not have a clearance tag. After hearing the evidence, the jury returned a verdict of guilty.

{¶8} The trial court sentenced Sturgeon to serve 90 days in jail and to pay a fine of $400.00, however, the trial court suspended 80 days of the jail time and $250.00 of the fine. Sturgeon was given the option of serving 33 days of house arrest instead of the jail time. The trial court also ordered Sturgeon to stay away from all Wal-Mart Stores.

{¶9} Sturgeon now appeals, asserting the following assignments of error.

## ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED WHEN IT STARTED APPELLANT'S JURY TRIAL IN VIOLATION OF CRIMINAL RULE 43(A) AND R.C. 2945.12, WHEN IT DID NOT ADDRESS APPELLANT ON THE RECORD, AND WHEN IT DID NOT OBTAIN A WRITTEN WAIVER IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS.**

## ASSIGNMENT OF ERROR NO. II

**APPELLANT'S COUNSEL WAS INEFFECTIVE WHEN SHE ALLOWED THE APPELLANT'S JURY TRIAL TO START WITHOUT APPELLANT'S PRESENCE, DID NOT OBTAIN A WRITTEN WAIVER FROM APPELLANT, AND DID NOT SEQUESTER THE PROPOSED JURORS REGARDING APPELLANT'S ABSENCE.**

## ASSIGNMENT OF ERROR NO. III

**THE RECORD CONTAINED INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION FOR THEFT UNDER OHIO REVISED CODE SECTION 2913.02.**

## ASSIGNMENT OF ERROR NO. IV

**THE CONVICTION FOR THEFT UNDER OHIO REVISED CODE SECTION 2913.02 WAS CONTRARY TO THE MANIFEST WEIGHT OF [*SIC*] EVIDENCE.**

### *First Assignment of Error*

{¶10} In her first assignment of error, Sturgeon asserts that the trial court erred when it began voir dire prior to her being present in the courtroom and when it did so without obtaining a valid waiver of her presence. Sturgeon claims that she suffered a violation of her constitutional and statutory right to be present at all stages during the trial proceedings.

{¶11} At the outset, we note that the record indicates Sturgeon's jury trial was scheduled to commence at 9:30 a.m. on July 20, 2012. (Doc Nos. 34, 35). As of 9:55 a.m., Sturgeon had yet to appear in the courtroom. The following are excerpts from the trial transcript regarding the circumstances surrounding the trial

court's decision to commence voir dire in Sturgeon's absence and Sturgeon's trial counsel's handling of the matter. This discussion was held outside the presence of the jury.

> **TRIAL COURT: It's obvious that the defendant is not here, and so I want to know if it's okay to move forward without her.**
>
> **DEFENSE COUNSEL: Obviously, I would prefer that she be here. However, I also don't want the Court calling attention to the fact that she's not here in front of the jury. Since that is my alternative, I would—if there's the admonishment of it being in front of the jury, certainly I would rather go forward with the voir dire.**
>
> **TRIAL COURT: Okay.**
>
> **PROSECUTOR: Well, she's—it's obvious the jury can see she's not here, so I don't think she's going to be concerned with that.**
>
> **DEFENSE COUNSEL: Well, I understand that but—**
>
> **PROSECUTOR: We're ready to go forward.**
>
> **DEFENSE COUNSEL:—we don't want to be—I don't want her admonished or anything.**
>
> **PROSECUTOR: I don't want to inconvenience this jury any more. Let's move forward.**
>
> **DEFENSE COUNSEL: Okay.**
>
> **TRIAL COURT: Okay. I won't say anything.**

(Tr. Trans. at 5-6)

{¶12} The trial transcript indicates that the trial court then began its introductory instructions to the jury prior to commencing voir dire. Shortly

-6-

thereafter, the record indicates that Sturgeon appeared in the courtroom when one of the jurors states on the record that she recognizes Sturgeon.

{¶13} After the jury is selected, Sturgeon's trial counsel states the following on the record outside the presence of the jury.

**DEFENSE COUNSEL:  I do want to put something on the record, though—**

**TRIAL COURT:  Okay.**

**DEFENSE COUNSEL:—if we could.  For the record, my client was not present when you started the instructions and we began here today.**

**TRIAL COURT:  Uh-huh.**

**DEFENSE COUNSEL:  However, you had just completed the instructions—[the Prosecutor] had just gotten up.  I don't think he'd even gotten more than one or two sentences out when she appeared.**

**TRIAL COURT:  That's correct.**

**DEFENSE COUNSEL:  And so I just wanted to make sure for the record that it was clear that she was here for all of the voir dire.  And [Sturgeon], you were okay with me—**

**STURGEON:  Yes.**

**DEFENSE COUNSEL:—going ahead with that?  Okay.**

**TRIAL COURT:  Okay.  Great.  I actually made a note in my— on my notes when she came in, so—**

**DEFENSE COUNSEL:  Okay.  Thank you**.

(Tr. Trans. at 76-77).

**{¶14}** Initially, we note that trial counsel did not object to the trial court commencing the trial proceedings without Sturgeon present. In the absence of objected error, we review this matter under a plain error analysis. Plain error does not exist unless it can be said that, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph two of the syllabus. In order to have plain error under Crim.R. 52(B), there must be an error, the error must be an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002–Ohio–68.

**{¶15}** It remains axiomatic that a criminal defendant has a fundamental right to be present at all critical stages of his criminal trial. *See* Section 10, Article I of the Ohio Constitution; Crim.R. 43(A) (stating "the defendant must be physically present at every stage of the criminal proceeding and trial[.]"). "An accused's absence, however, does not necessarily result in prejudicial or constitutional error. '[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.' " *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 90, quoting, *Snyder v. Massachusetts*, 291 U.S. 97, 107–108, 54 S.Ct. 330, (1934), overruled on other grounds, *Malloy v. Hogan*, 378 U.S. 1, 2, 84 S.Ct. 1489, (1964).

{¶16} Furthermore, even where compliance with the notice and waiver rules of Crim.R. 43(A)(2) and (3) is not found in the record, a defendant's absence may be improper and yet not rise to the level of plain error where the defendant suffers no prejudice. *State v. Warren*, 10th Dist. No. 10AP–376, 2010-Ohio-5718, ¶ 7, citing *State v. Williams*, 6 Ohio St.3d 281, 285–87 (1983).

{¶17} Here, the record clearly indicates that Sturgeon was present for all of the trial court proceedings but the trial court's introductory instructions to the jury and one or two sentences spoken by the prosecutor at the beginning of voir dire. While it is generally error for a trial court to commence the trial proceedings in the defendant's absence without first obtaining a valid waiver, we find nothing in the record to indicate that Sturgeon suffered actual prejudice by not being present for the initial minutes of the trial court proceedings. Moreover, the record establishes that Sturgeon acquiesced to her trial counsel's tactical decision to permit the trial court to proceed in her absence. Notably, it was also well within the trial court's inherent authority to issue a bench warrant for Sturgeon's arrest once it was apparent that she failed to appear to court on time.

{¶18} For all of these reasons, we conclude that Sturgeon failed to demonstrate the trial court committed reversible error in this instance. Sturgeon's first assignment of error is overruled.

*Second Assignment of Error*

**{¶19}** In her second assignment of error, Sturgeon asserts that her trial counsel was ineffective for failing to object to the trial court's commencement of voir dire in her absence, for not obtaining a valid waiver of her presence, and for failing to question proposed jurors regarding Sturgeon's absence during the commencement of voir dire.

**{¶20}** At the outset, we note that attorneys licensed by the State of Ohio are presumed to provide competent representation. *State v. Hoffman*, 129 Ohio App.3d 407 (1998). To prevail on a claim of ineffective assistance of counsel, a defendant must prove that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, paragraph two of the syllabus (1989). This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland*, 466 U.S. at 687.

**{¶21}** Also, in order to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial or in his legal proceedings would have been different. *Bradley*, 42 Ohio St.3d at paragraph

three of the syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the result. *Id*. at 142.

{¶22} When considering a claim of ineffective assistance of counsel, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Accordingly, courts are to afford a high level of deference to the performance of trial counsel. *Bradley*, 42 Ohio St.3d at 142. Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558, 1995–Ohio–104. Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See Bradley* at 141–142.

{¶23} The trial transcript excerpts discussed in our resolution of the first assignment of error demonstrate that it was trial counsel's tactical trial decision to avoid the trial court explicitly bringing Sturgeon's absence to the jury's attention. Trial counsel specifically requested that the trial court not admonish Sturgeon in front of the jury when she appeared late to court. Moreover, trial counsel noted on the record when Sturgeon actually appeared, and documented that the amount of court proceedings which occurred in Sturgeon's absence was minimal.

{¶24} In sum, Surgeon simply fails to meet her burden in showing that there exists a reasonable probability that, but for the alleged errors of her trial

counsel, the outcome at trial would have been different. Therefore, we find Sturgeon's ineffective assistance of counsel claim to be meritless and the second assignment of error is overruled.

*Third and Fourth Assignments of Error*

**{¶25}** In her third and fourth assignments of error, Sturgeon claims that the prosecution failed to present sufficient evidence to establish that she knowingly obtained or exerted control over the items in her cart without paying for them. Additionally, Sturgeon argues that the prosecution failed to present sufficient evidence of the value of the belts which were alleged to be regular price and not on clearance. Sturgeon also maintains that the jury's verdict convicting her of theft was against the manifest weight of the evidence because she testified at trial that she believed the items in question were already paid for and the belts were on clearance, demonstrating that the entire incident was a misunderstanding.

**{¶26}** When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus.

**{¶27}** In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'[weigh] the

evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered .'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *quoting State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶28} Sturgeon was convicted of theft, in violation of R.C. 2913.02, which states in pertinent part:

> **(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:**
>
> **(1) Without the consent of the owner or person authorized to give consent;**

{¶29} The crux of Sturgeon's argument on appeal is that the prosecution failed to prove that she acted "knowingly." Notably, a "person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶30} The following testimony was presented at trial.

{¶31} Rhonda Houseworth, a cashier at Wal-Mart testified for the prosecution. Rhonda testified that Sturgeon arrived at her register with a cart "completely full" of groceries. (Tr. Trans. at 178). Rhonda testified that during the transaction Sturgeon left to get another cart. Rhonda recalled Sturgeon being focused on getting through the checkout line, and that she did not appear to be confused and was cautious to make sure all the items were scanned. Rhonda remembered Sturgeon assisting her with the transaction by lifting up some of the larger items from the cart for her to scan. Rhonda recalled that Sturgeon paid for the items with a food stamp card. Rhonda testified that Sturgeon's cart was empty after the transaction was complete.

{¶32} Rhonda also testified that Sturgeon's mother was pushing another cart behind Sturgeon which contained a few items. Rhonda specifically recalled seeing the Turkey, the 24-pack of water, and other items in this second cart. Rhonda testified that she did not ring-up any of the items in the second cart because Sturgeon's mother turned the cart around and did not go through the checkout line. Rhonda recalled Sturgeon and her mother walking toward the jewelry counter after Sturgeon paid for the items in the first cart.

{¶33} The prosecution also presented the testimony of Heather Todd, a Wal-Mart "Asset Protection Associate." Heather narrated for the jury her initial observations of Sturgeon's suspicious behavior at the self-checkout line using

footage from one of Wal-Mart's security cameras. The footage depicts Sturgeon holding three belts above the self-checkout scanner; a pink clearance-priced belt and two regular-priced belts, one silver and one black. Sturgeon is seen scanning the pink clearance belt once, placing it back into the cart and then placing one of the regular-priced belts in the bagging area. The footage then depicts Sturgeon again taking the pink clearance-priced belt from the cart, scanning it a second time, and then placing the other regular-priced belt in the bagging area. Near the end of the transaction, Sturgeon is seen placing the two regular-priced belts into a bag.

{¶34} Heather testified that eventually Sturgeon gave the clearance-priced belt to the clerk at the self-checkout podium. Heather testified that the price of the clearance belt was $3.00, and the price of the regular-priced belts was $10.00 each. Heather authenticated a receipt which documented value of each belt. This receipt was admitted as an exhibit by the prosecution at trial.

{¶35} Heather testified that when she walked onto the floor to the self-checkout line, she observed Sturgeon standing next to a cart containing several items that were not bagged. Heather also recalled seeing Sturgeon's mother standing near another cart loaded with bagged items. Heather noticed that Sturgeon did not show any signs of confusion when she operated the self-checkout register.

{¶36} As Heather continued to observe Sturgeon, she watched Sturgeon scan a few more items, bag the items, and complete the transaction by paying cash. However, Heather noticed that Sturgeon did not scan several items in the cart. Heather observed Sturgeon move one of the unscanned items from her cart to the other cart near her mother. She also noticed Sturgeon attempt to hide some of the smaller items in the cart between her purse and a roaster pan she had purchased.

{¶37} Heather testified that once Sturgeon passed the point of sale, she and another Asset Protection Associate, John Maddox, confronted Sturgeon and her mother, reviewed their receipts, and discovered that the items in question had not been purchased. Heather testified that the total value of the items not scanned was $34.47. Heather authenticated a receipt which documented the value of the items and this receipt was admitted as an exhibit by the prosecution at trial.

{¶38} Heather's testimony was corroborated by the testimony of John Maddox, who is also an Asset Protection Associate at Wal-Mart. John testified that he was in the security office with Heather when she asked him to review the security camera footage of Sturgeon in the self-checkout line. John recalled Sturgeon's suspicious behavior of "under-ringing" the belts. (Tr. Trans. 164). John testified that he joined Heather on the floor and observed Sturgeon attempt to

leave the store without paying for some items. John assisted Heather in confronting Sturgeon and her mother and detaining them for further investigation.

{¶39} In her defense, Sturgeon tried to establish through her own testimony and the testimony of her mother that Sturgeon did not intend to take the items in the cart without paying for them. Collectively, Sturgeon and her mother testified that the two carts were used to separate the "taxable" and "non-taxable" items for purposes of using the food stamp card and that they both believed the items in dispute had been purchased in the first transaction through Rhonda's checkout line. The defense also tried to establish that Sturgeon was an easily-distracted shopaholic who lost track of which items had been purchased.

{¶40} As for the belts, Sturgeon maintained that she selected all three belts from the clearance area. She explained that there were several belts of the same style in the clearance area with clearance tags, but the ones in her size did not have a clearance tag. Sturgeon claimed that she grabbed a belt with a clearance tag that was not her size so she could scan it for the only two belts in her size that did not have the clearance tags. Sturgeon testified that the clerk at the self-checkout podium told her to scan the belts this way.

{¶41} Based on the foregoing testimony, we believe that the prosecution presented sufficient evidence establishing all the elements of theft that, if believed, would convince a jury of Sturgeon's guilt beyond a reasonable doubt.

Furthermore, we emphasize that the weight to be given to the evidence and the credibility of witnesses are primarily reserved for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *see also State v. Awan*, 22 Ohio St.3d 120, 123 (1986) (stating that "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact").

{¶42} Here, the jury chose to believe the testimony of the prosecution's witnesses over the testimony of Sturgeon and her mother. Because the jury was in the best position to weigh the credibility of the testimony, we find that the jury's verdict was not against the manifest weight of the evidence. Accordingly, Sturgeon's third and fourth assignments of error are overruled.

{¶43} For all these reasons the judgment and sentence of the Marion Municipal Court is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**