[Cite as *State v. Elmore*, 2017-Ohio-925.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 16 JE 0013 |
| VS. | ) | |
| | ) | OPINION |
| ANTHONY Q. ELMORE, aka | ) | |
| CADILLAC | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:    Criminal Appeal from the Court of Common Pleas of Jefferson County, Ohio
Case No. 13 CR 209 B

JUDGMENT:    Affirmed.

APPEARANCES:
For Plaintiff-Appellee    Attorney Jane Hanlin
Jefferson County Prosecutor
16001 State Route 7
Steubenville, Ohio 43952

For Defendant-Appellant    Attorney Aaron Richardson
4110 Sunset Boulevard
Steubenville, Ohio 43952

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: March 13, 2017

DeGENARO, J.

{¶1} Defendant-Appellant, Anthony Q. Elmore, aka Cadillac, appeals the trial court's judgment resentencing him pursuant to a remand order from this court regarding consecutive sentence findings. Elmore argues his felonious assault and having weapons under disability should have merged, and that the trial court erred by holding the resentencing by telephone and not in his physical presence, allegedly in violation of Crim.R. 43(A). As Elmore's assignments of error are meritless, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶2} Following a jury trial Elmore was found guilty of one count of felonious assault, a second-degree felony, with an attached firearm specification, and one count of weapons under disability, a third-degree felony. *State v. Elmore*, 2016-Ohio-890, 60 N.E.3d 794, ¶19 (7th Dist.) ("*Elmore I*").

{¶3} These convictions stemmed from an ambush-style attack on Torrance Lyda. Elmore and a co-defendant tracked down Lyda while he was walking with a group of juvenile males, planning to shoot at the group. *Id*. at ¶ 34. Elmore admitted to a detective that he and his co-defendant had planned to hide, wait for the group to pass, count to five and begin shooting. *Id*. at ¶ 16. Ultimately, an exchange of gunfire took place, with both Elmore and the co-defendant firing weapons. *Id*. Elmore testified at trial that he had fired the weapon and then abandoned the firearm in the woods. *Id*. at ¶ 16. He also admitted he had immediately started looking for another gun after the incident. *Id*. at ¶ 16, 34.

{¶4} Following a hearing, the trial court sentenced Elmore to eight years for the felonious assault count, three years on the firearm specification and three years on the weapons under disability count, to be served consecutively for a 14 year aggregate prison term. *Id*. at ¶ 20.

{¶5} Elmore filed a direct appeal with this court, alleging that his felonious assault conviction was against the manifest weight of the evidence, and that the 14 year sentence imposed by the trial court was erroneous. With respect to the sentencing assignment of error, Elmore argued that consecutive sentences were

improper and that the maximum sentence was an abuse of discretion. He did not make a merger argument. *Elmore I* at ¶ 36-61.

**{¶6}** We held Elmore's conviction was not against the manifest weight of the evidence, and that the trial court's imposition of a maximum sentence was proper, however, we reversed and remanded for resentencing to correct a consecutive sentencing error. *Id.* at ¶ 35; 56.

> [T]he trial court did make findings which comport with both subpart (a) and (c), which are two of the three options which comprise the third statutory finding. Specifically, the trial court found that Elmore was under post-release control when he committed the offenses. See R.C. 2929.14(C)(4)(a). The trial court's finding that Elmore's criminal record was "repeated and long" and that it took place in a residential neighborhood, around juveniles, and was part of an organized criminal activity could constitute a finding that the "offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C. 2929.14(C)(4)(c).
>
>      \* \* \*
>
> However, under even the most generous reading, the trial court failed to make a finding that consecutive sentences is not disproportionate to the seriousness of Elmore's conduct and to the danger he poses to the public. R.C. 2929.14(C)(4). These words were used with intent by the General Assembly. Inherent in the proportionality finding is that a trial court engage in a weighing process, comparing or balancing these two factors, which it stands in the best position to do. An appellate court on review could scour the record for findings which satisfy this requirement, but if the record fails to demonstrate that the trial court actually weighed these factors, then reversal is required. Here, there is nothing in the record before us

demonstrating the trial court did that; in fact, prior to the imposition of Elmore's sentence, the trial court never uses the term consecutive sentence.

*Elmore I* at ¶ 55, ¶ 58.

{¶7} Accordingly, we held that "the trial court's statement during the sentencing hearing in this matter [did] not comport with the requirements of R.C. 2929.14(C)(4) because it failed to make the proportionality finding." *Id.* at ¶ 60. For that reason, this court vacated the sentence and remanded for a resentencing regarding consecutive sentences. *Id.* at ¶ 62.

{¶8} Elmore's resentencing hearing was held; Elmore participated by telephone from prison while counsel, the trial court and the court reporter were present at the court. Neither Elmore nor defense counsel lodged an objection to Elmore attending the hearing by phone. Initially, there were some technical difficulties with the call and it disconnected before proceedings began. The bailiff called Elmore in prison a second time and Elmore agreed that there was a bad connection the first time but that they had a good one then.

{¶9} Shortly thereafter, Elmore voiced concerns about the connection being poor. He asked if his attorney was there, and defense counsel confirmed he was. Defense counsel then presented a sentencing argument which centered mainly on merger. The prosecutor presented arguments; objecting to defense counsel's merger argument and noting that the remand from this court was limited in scope to the consecutive sentence findings.

{¶10} The trial court then addressed Elmore directly, asking him if there was anything he had to say. Elmore did not complain about the connection, was able to understand and answer the trial court's inquiry and made a brief statement. The trial court rejected the merger argument. Then the trial court proceeded to set forth some factual background regarding the offenses, when he was interrupted by Elmore who wanted to assert that the crimes were not gang-related. Elmore and the trial court had a brief dialogue regarding this point, and at no time did Elmore assert that there

were problems with the phone connections.

{¶11} The trial court then proceeded to make all of the required consecutive sentencing findings on the record:

> THE COURT: Defendant has a long record, a long criminal record, was on Post-Release Control at the time of the offense, having been released from prison not long before[,] and after the offense Defendant took and left a loaded firearm in the woods where a child could find it and then immediately went on the hunt for a new firearm which is not a good thing.
>
> The offense is the worst form of the offense in that it was an attempt at bushwhacking [designed] to shoot a victim in the back and it failed only because the co-defendant fell and began shooting early. Otherwise, it would have been a murder and actually it might have been a multiple murder.
>
> The Defendant represents the greatest likelihood of recidivism due to his history of criminal offenses and the egregiousness of this offense and due to his long criminal record and the fact that he was on Post-Release Control at the time of the offense.
>
> And for all the factors set forth above, the fact of the matter is consecutive sentences are absolutely necessary to protect the public and to punish the defendant in light of his repeated criminal conduct and his lack of remorse coupled with his delusions of being a victim. Consecutive sentences are not disproportionate. Actually they're not even enough to - - and they're not disproportionate to the seriousness of the Defendant's conduct and the danger the Defendant poses to the public.

{¶12} Accordingly, the trial court again sentenced Elmore to an aggregate 14-year prison term: eight years for the felonious assault conviction, three years on the

firearm specification and three years on the weapons under disability conviction, to be served consecutively.

**Merger**

{¶13} In his first of two assignments of error, Elmore asserts:

The trial court erred when it refused to merge counts I and II for the purposes of sentencing.

{¶14} At the resentencing, Elmore argued that his felonious assault and having weapons under disability convictions were allied offenses of similar import and should merge for sentencing purposes. *See generally State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892; and R.C. 2941.25.

{¶15} The scope of the resentencing pursuant to our remand order in *Elmore I*, was limited to the issue of consecutive sentences. We did not remand for a de novo sentencing hearing. *Elmore I* at ¶ 36-62. Moreover, Elmore failed to raise merger during his initial sentencing and direct appeal; therefore that issue is barred by res judicata upon resentencing and this appeal.

{¶16} "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating * * * any defense or any claimed lack of due process that was raised or could have been raised * * * on an appeal from that judgment." *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus. It is well settled that "any issue that could have been raised on direct appeal and was not is res judicata and not subject to review in subsequent proceedings." *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 16.

{¶17} Further, as the Ohio Supreme Court has recently explained: "[W]hen a trial court finds that convictions are not allied offenses of similar import, or when it fails to make any finding regarding whether the offenses are allied * * * any error [regarding the failure to merge] must be asserted in a timely appeal or it will be barred by principles of res judicata." *State v. Williams*, Slip Opinion No. 2016-Ohio-

7658, ¶ 26 (Nov. 10, 2016), citing *State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, 1 N.E.3d 382, ¶ 8-9; *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3; *See also State v. Dillard*, 7th Dist. No. 08 JE 35, 2010-Ohio-1407, ¶ 22-23 (defendant's merger argument was barred by res judicata in subsequent appeal from the resentencing entry.)

**{¶18}** Accordingly, Elmore's merger argument is barred by res judicata and his first assignment of error is meritless.

### Consecutive Sentence Resentencing Procedure

**{¶19}** In his second and final assignment of error, Elmore asserts:

The trial court committed reversible error when it proceeded with sentencing when defendant was not present.

**{¶20}** Elmore argues the trial court erred by holding the limited resentencing by telephone and not in his physical presence, in violation of Crim.R. 43(A). However, Elmore failed to raise this error to the trial court by objecting. "[E]ven where compliance with the notice and waiver rules of Crim.R. 43(A)(2) and (3) is not found in the record, a defendant's absence may be improper and yet not rise to the level of plain error where the defendant suffers no prejudice." *State v. Sturgeon*, 3d Dist. No. 2013-Ohio-1389, ¶ 16, citing *State v. Warren*, 10th Dist. No. 10AP–376, 2010–Ohio–5718, ¶ 7, citing *State v. Williams*, 6 Ohio St.3d 281, 285–87 (1983).

**{¶21}** The test for plain error is stringent. A party claiming plain error must show that an error occurred, the error was obvious, and the error affected the outcome of the proceeding; in other words, that there was prejudice. *State v. Davis*, 116 Ohio St.3d 404, 2008–Ohio–2, ¶ 378.

**{¶22}** Crim.R. 43(A) provides in pertinent part:

Except as provided in Rule 10 of these rules [discussing arraignments] and division (A)(2) of this rule [providing for the defendant's presence via videoconference if certain conditions are met],

the defendant must be physically present at every stage of the criminal proceeding and trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules. * * *

* * *

The defendant may waive, in writing or on the record, the defendant's right to be physically present under these rules with leave of court.

Crim.R. 43(A)(1) and (3).

**{¶23}** Elmore is correct that under Crim.R. 43(A), a written waiver of his presence is required and there no such waiver in the record. The State cites *State v. Marks*, 7th Dist. No. 868, 2002-Ohio-6267, is support of its argument that the resentencing here did not run afoul of Crim.R. 43(A). However, *Marks* is distinguishable.

**{¶24}** *Marks* involved a second appeal following a remand for resentencing for the trial court to correct its failure to state that it had considered the factors in R.C. 2929.13(B) prior to imposing a prison sentence for a fourth-degree felony. In *Marks*, the trial court issued a modified sentencing entry stating it had considered those factors at the original sentencing. A majority of the panel concluded it was proper for the trial court to correct the issue without a hearing. *Id.* at ¶ 24-25. The sentencing provision at issue there required only that the trial court consider certain factors prior to sentencing the defendant to a prison term. *See id.* at ¶ 21. Since the trial court merely clarified its original sentencing entry to state it had considered the factors, no resentencing hearing was required and "[n]either due process nor Crim.R. 43 require[d] Appellant's presence for such a ministerial and nonsubstantive undertaking." *Marks* at ¶ 24-25.

**{¶25}** By contrast, here the error at the first sentencing was that the trial court failed to make certain specific findings on the record during the sentencing hearing. *Elmore I* at ¶ 60-61. We concluded that the fact that the trial court made the findings

in the initial sentencing entry was insufficient. *Id.* at ¶ 61. Upon remand here, unlike *Marks*, a hearing was required to correct the sentencing error, and Elmore's presence was required at that hearing absent a written waiver or other exceptions in the rule such as a videoconference hearing, which did not occur here. *See* Crim.R. 43. Thus, holding the hearing via telephone constitutes error.

**{¶26}** However, Elmore cannot demonstrate prejudice. Thus, it does not rise to the level of plain error. Initial telephone connection issues were resolved and did not occur during the course of the hearing. Defense counsel was able to present arguments. Elmore himself gave a statement when the trial court specifically addressed him. He did not complain of any connection problems at that time and he was able to hear and understand the trial court's questions of him and converse with the court during an extended colloquy.

**{¶27}** The outcome would not have been any different had Elmore been present in open court or video conferencing instead of by phone. There was ample evidence in the record to support the imposition of consecutive sentences; the case was simply remanded for the trial court to properly articulate all of the required findings on the record pursuant to R.C. 2929.14(C)(4). *Elmore I* at ¶ 36-62. It is undisputed that the trial court complied and made all of the required findings.

**{¶28}** In sum, both of Elmore's assignments of error are meritless. Accordingly, the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Robb, P. J., concurs.