[Cite as *State v. James*, 2025-Ohio-2629.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DUSTIN LEE JAMES,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 MA 0104

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2022 CR 00353

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Lynn Maro*, Mahoning County Prosecutor*, Atty. Ralph M. Rivera* and *Atty. Kristie Weibling*, Assistant Prosecuting Attorneys, for Plaintiff-Appellee and

*Atty. Michael A. Partlow*, for Defendant-Appellant.

Dated: July 25, 2025

**DICKEY, J.**

{¶1} Appellant, Dustin Lee James, appeals his sentences for felonious assault in violation of R.C. 2903.11(A)(D)(1)(a), a felony of the second degree, and domestic violence in violation of R.C. 2921.11(A)(D), a misdemeanor of the first degree, following a jury trial; and having a weapon under disability, a violation of R.C. 2923.13(A)(2)(B), a felony of the third degree, which was contemporaneously tried to the bench, in the Mahoning County Court of Common Pleas. This matter is before us for a second time after Appellant successfully challenged the trial court's imposition of consecutive sentences in *State v. James*, 2024-Ohio-4567 ("*James I*"). At the original sentencing hearing and in the original sentencing entry, the trial court imposed concurrent sentences to be served consecutively to Appellant's previously-imposed sentence in 22 CR 84 ("22 CR 84 sentence"), without making the statutorily-mandated findings of fact required by R.C. 2929.14(C)(4).

{¶2} At the resentencing hearing, the trial court imposed an eight-to-twelve year sentence to be served consecutively with the 22 CR 84 sentence. In the resentencing entry, the trial court imposed separate sentences for each conviction – eight-to-twelve years for the felonious assault conviction; one-hundred-and-eighty days for the domestic violence conviction; and thirty-six months for the weapon under disability conviction – to be served concurrently, but consecutively to the 22 CR 84 sentence.

{¶3} In this appeal, Appellant advances three assignments of error. First, Appellant challenges the imposition of his concurrent sentences to be served consecutively to the 22 CR 84 sentence. Second, Appellant contends the trial court's imposition of the maximum sentences for the felonious assault and domestic violence convictions is not supported by the record. Finally, Appellant argues the trial court's failure to impose separate sentences for each crime during the resentencing hearing constitutes an illegal blanket or omnibus sentence.

{¶4} For the following reasons, we affirm the trial court's imposition of consecutive sentences. We further find Appellant's challenges to the imposition of maximum sentences and the omnibus sentence at the resentencing hearing are barred by res judicata.

## FACTS AND PROCEDURAL HISTORY

**{¶5}** The following facts are taken from *James I*:

On June 19, 2022, Appellant's live-in girlfriend was treated in the emergency room for injuries, which she said Appellant caused that day. He was arrested in the hospital lobby. Five days later, the victim's mother called the Boardman police to report finding a gun in the nightstand while she was cleaning out the apartment for the victim, who moved out after the assault.

On July 28, 2022, Appellant was indicted for felonious assault (second-degree felony), having a weapon while under disability (third-degree felony), and misdemeanor domestic violence (first-degree felony [sic]). Appellant waived a jury trial on the charge of having a weapon while under disability, and the court heard evidence on this count.

At the jury trial on the other two counts, a police officer who responded to the hospital testified he observed swelling and bruising on the victim's nose, a cut on her upper lip, and marks around her right upper arm and forearm. Photographs he took were introduced as evidence. (Tr. 135-138); (St.Ex. 1-6). He described the victim as distraught, upset, in pain, and crying. (Tr. 138). He said the victim attributed the injuries on her arm to Appellant grabbing her. He said, "As far as the injuries on her face, I don't believe she could recall how she obtained those injuries." (Tr. 144). A second police officer confirmed he observed the victim's facial injuries and injured arm at the hospital. (Tr. 126).

The victim testified she dated Appellant exclusively and lived with him for seven years. (Tr. 146). On the day of the incident, they continued an argument from the prior night. (Tr. 148). After approximately an hour, Appellant "flipped a table, he was getting angry, and I knew this was usually where he got physical." He was yelling at her, and she decided to flee the

apartment hoping she would be safer by the busy road. (Tr. 148-149). However, he followed her outside and continued the argument.

According to her testimony, "I just remember him threatening me, telling me he was going to count down, if I didn't get inside the apartment he was going to hurt me." (Tr. 149). She then testified, "I just remember pleading with him not to . . . The next thing I recall was [sitting] at the apartment next door and there was like blood all over my shirt, and the guy that lived [with Appellant's cousin] next door was just looking at me and I was crying." (150-151).

The victim responded in the affirmative when the prosecutor asked if she blacked out. (Tr. 150). When she woke up confused in his cousin's apartment, Appellant "tried to convince" the victim and Appellant's cousin that the victim fell at the single step outside of their apartment. (Tr. 152, 170).

After the victim voiced that she needed to go to the hospital, they returned to the victim's apartment where Appellant's cousin had her change into clean clothes (instead of wearing her bloodied pajama top and pants). (Tr. 152-153). Appellant gave the victim toilet paper because her nose "was bleeding pretty bad." According to the victim's testimony, when the cousin left to get ready to transport them to the hospital, Appellant said, "well, I really messed up this time" (or "[s]omething along th[ose] lines"). (Tr. 153). When the victim arrived at the emergency room with Appellant at her side, she reported she had been in a fight but testified this was what Appellant told her to say. (Tr. 153, 174).

Regarding her injuries, the victim testified, "My nose was broken, my orbital nose was broken, and my lip was busted up." When asked if she experienced a lot of pain, she explained, "Yeah, my face was pretty swollen on this side and I was bleeding from my nose for a while. And even in my lip, still, here, I have a little scar inside of it that hurt, too. And it was hard to

brush my teeth for a couple days after that. My mouth was really sore." (Tr. 155).

The victim disclosed being ashamed, embarrassed, and fearful to report Appellant's abuse. (Tr. 175). However, just before she was released (with Appellant in the waiting room), she was encouraged by a female friend she was texting "to let them know what actually happened." (Tr. 154-155, 174-175). The victim then did so by telling a nurse and the physician assistant about what happened to her and answering yes when asked if she wanted them to call the police. (Tr. 156). She estimated she had been at the hospital for an hour before disclosing Appellant's abuse. (Tr. 157). When defense counsel asked why she thought Appellant hurt her if she could not remember what happened between his threat and waking up bleeding, the victim replied, "I don't remember it, but I know what happened . . . because I know how he would get. He would get physical with me when he would get like that; so, I know." (Tr. 160).

The victim read a letter Appellant sent her from jail. The letter said he would always love her and pleaded with her to call his attorney who wanted to talk to her. In the letter, Appellant also stated, "I never got to explain, but just know this. It didn't happen the way you think. Please remove any thoughts you have of me hitting you over and over again. That's just not the case. Damn the drugs. I hope you realize we weren't ourselves those past few months." (Tr. 159); (St.Ex. 7-8). As to this reference to drugs, the victim said they used fentanyl daily, including the night before the incident; she did not believe the drug would have continued to affect her by the time the incident occurred. (Tr. 160).

An emergency room physician assistant testified the victim presented with a lot of swelling to the sides of the face, facial bones, and nasal bridge. Her eyes were also swollen. She had "a very fat lip with a split in the top" and bruising on the left side of her face and her right upper arm

and forearm. The CT scan showed a nasal fracture (on the bridge of the nose) and a fractured maxillary bone extending into cheek regions (as pointed to from the stand). The physician assistant described the injury as "Very, very painful" and opined the victim would experience pain until it healed. She prescribed ice and Percocet. (Tr. 210-215).

The physician assistant testified the victim was crying and upset the entire time she spent with her in the emergency room. It was noted a typical emergency room visit lasts at least three hours. This witness said the victim initially said she was assaulted during an argument with a friend; however, near the end of the visit, she admitted she was assaulted by her boyfriend four hours earlier outside of their home. The victim also disclosed Appellant was calling her phone from the waiting room and asking to come see her. When the victim said she did not feel safe returning home with Appellant and asked for help, the physician assistant called the police. (Tr. 208-209, 217). On cross-examination of the physician assistant, testimony was elicited that the victim reported being punched in the face multiple times by Appellant. (Tr. 223-224, 227).

In the bench trial portion of the case, the victim testified she did not possess a firearm. She answered in the affirmative upon being asked, "did you know [Appellant] to possess a firearm?" When asked where Appellant would keep his firearm, she disclosed, "In the apartment, sometimes in the room or in the closet." (Tr. 179). On cross-examination, the victim testified she knew there was a weapon at the apartment on the day of the incident, and she noted Appellant bought it from a friend a few years earlier. (Tr. 182). After the incident, the victim returned to their apartment only to gather some necessities before entering a rehabilitation facility, at which time her family cleaned out the apartment. (Tr. 180).

The victim's mother testified she went to the apartment to clean out her daughter's belongings and found a gun in the drawer of the nightstand. (Tr. 187-188). She called the police without touching the gun. (Tr. 188).

Lastly, a detective testified the victim's mother called on June 24, 2022 to report the gun she found. (Tr. 193-194). The detective knew Appellant was not permitted to possess a firearm due to a pending felony indictment in Mahoning County C.P. No. 22 CR 84, which included two counts of felonious assault. (Tr. 195-196, 198). He identified as exhibits Appellant's March 10, 2022 indictment containing notice that he was prohibited from possessing a weapon due to the pending indictment and the March 22, 2022 arraignment entry showing Appellant had been served with the indictment. (Tr. 198-199); (St.Ex. 20-21). Upon obtaining a search warrant, the detective retrieved the gun and a loaded magazine from the top drawer of the nightstand; the gun's serial number was scratched off. (Tr. 195-196). The detective said he had the gun test-fired and learned it was operable. (Tr. 197). In any event, the defense stipulated to the firearm's operability. (Tr. 178).

The court found Appellant guilty of having a weapon while under disability. The jury found Appellant guilty of felonious assault and domestic violence. At sentencing, the court imposed a prison sentence of 8 to 12 years for felonious assault (with lesser concurrent sentences on the other offenses for a total sentence of 8 to 12 years). As the state requested, the court ordered the sentence in this case to be served consecutively to the sentence Appellant was serving in 22 CR 84 (the prior case resulting in Appellant's ban from possessing a weapon). Appellant filed a timely notice of appeal from the February 8, 2024 sentencing entry.

*James I* at ¶ 2-17.

Case No. 24 MA 0104

{¶6} When the original sentence was imposed, Appellant was serving the 22 CR 84 sentence. A summary of the facts and resulting convictions in 22 CR 84 informs our decision.

{¶7} Appellant's convictions were predicated upon the following facts taken from *State v. James*, 2024-Ohio-1322 (7th Dist.). On December 24, 2021, an ambulance was dispatched to a local Walmart department store, where Appellant was displaying signs of an overdose, including erratic behavior and slipping in and out of consciousness. When Appellant became completely unresponsive and his vital signs began to plummet, Narcan was administered.

{¶8} Upon receiving the injection, Appellant attacked the emergency medical technician ("EMT") providing medical treatment. The combined efforts of a second EMT and three police officers dispatched to the scene were required to subdue Appellant. As a result of the altercation, the treating EMT suffered a shoulder sprain and soreness in her hands. The second EMT suffered a concussion. One of the officers was struck in the face and suffered a split lip.

{¶9} On March 21, 2023, Appellant was sentenced to concurrent terms of imprisonment totaling eight-to-twelve years for one count of felonious assault, a felony of the second degree; three counts of assault, felonies of the fourth degree; one count of obstructing business, a felony of the fifth degree; and one count of resisting arrest, a misdemeanor of the second degree, following a jury trial in 22 CR 84 in the Mahoning County Court of Common Pleas.

{¶10} Returning to the procedural history in this appeal, Appellant challenged the sufficiency and weight of the evidence underlying his convictions in *James I.* In addition, Appellant argued the trial court erred when it did not make the statutorily-mandated findings to impose his sentences to be served consecutively with the 22 CR 84 sentence. The state conceded the trial court's sentencing error pursuant to *State v. Hill*, 2014-Ohio-1965, ¶ 6, 20 (7th Dist.), abrogated on other grounds in *State v. Marcum*, 2016-Ohio-1002. We affirmed Appellant's convictions, but vacated his sentence and remanded the matter for resentencing.

{¶11} Our opinion and judgment entry concludes:

For the foregoing reasons, the trial court and jury verdicts are affirmed, but the judgment entry of sentence is reversed and vacated and the case remanded for resentencing due to the lack of consecutive sentence findings at the sentencing hearing and in the judgment entry.

*James I*, 2024-Ohio-4567, ¶ 56.

**{¶12}** It is important to note that the trial court imposed a single sentence of eight-to-twelve years at the original sentencing hearing, without imposing separate sentences for the domestic violence and firearm convictions.  However, in the original sentencing entry, the trial court imposed separate sentences for each crime:  eight to twelve years for the felonious assault conviction (maximum); 180 day for the domestic violence conviction (maximum); and thirty-six months for the weapons conviction.

**{¶13}** At the resentencing hearing conducted on November 6, 2024, the trial court imposed the identical sentence, but added the fact finding required to impose consecutive sentences:

Therefore, it is the order of this Court that the defendant be sentenced to eight years in the Department of Rehabilitation and Corrections which, based on the behavior in the Department of Rehabilitation and Corrections, could be increased to 12 years.

It is the further order of this Court that the defendant -- this case run consecutive to the case in 22 CR 84. The Court finds that consecutive sentences are necessary to protect the public from future crimes and punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.

The Court also finds that the defendant committed the offense while awaiting sentencing or on probation or out on bail on another charge.

(11/6/24 Resent. Hrg, p. 20-21.)  In the resentencing entry, the trial court imposes the identical separate sentences for each crime imposed in the original sentencing entry:

Case No. 24 MA 0104

eight to twelve years for the felonious assault conviction; 180 days for the domestic violence conviction; and thirty-six months for the weapons conviction.

**{¶14}** This timely appeal followed.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED BY SENTENCING APPELLANT TO EIGHT YEARS OF INCARCERATION, TO BE SERVED CONSECUTIVELY TO THE SENTENCE IMPOSED IN AN UNRELATED CASE, AS THE RECORD DOES NOT SUPPORT SUCH A SENTENCE.**

**{¶15}** In his first assignment of error, Appellant contends there is not clear and convincing evidence in the record supporting the imposition of consecutive sentences. We utilize R.C. 2953.08(G) as the standard of review in all felony sentencing appeals. *State v. Michaels*, 2019-Ohio-497, ¶ 2 (7th Dist.), citing *State v. Marcum*, 2016-Ohio-1002, ¶ 1.

**{¶16}** R.C. 2953.08(G) states in pertinent part:

(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2)(a)-(b).

{¶17} There is a statutory presumption in favor of concurrent sentences. *State v. Bonnell*, 2014-Ohio-3177, ¶ 23. R.C. 2929.41(A) reads in relevant part, "[e]xcept as provided in division (B) of this section, division (C) of section 2929.14, or division (D) or (E) of section 2971.03 of the Revised Code, a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States."

{¶18} R.C. 2929.14(C)(4) reads in its entirety:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive sentence is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

**{¶19}** A trial court judge must make the consecutive sentence findings at the sentencing hearing and must additionally incorporate the findings into the sentencing entry. *State v. Williams*, 2015-Ohio-4100, ¶ 34 (7th Dist.), citing *Bonnell*, 2014-Ohio-3177, ¶ 37. The court "need not state reasons to support its finding nor is it required to use any 'magic' or 'talismanic' words, so long as it is apparent that the court conducted the proper analysis." *Id.,* citing *State v. Jones*, 2014-Ohio-2248, ¶ 6 (7th Dist.); *State v. Verity*, 2013-Ohio-1158, ¶ 28-29 (7th Dist.).

**{¶20}** Having reviewed the record, we find there is clear and convincing evidence supporting the trial court's imposition of consecutive sentences in this case. Appellant brutally assaulted his girlfriend of seven years. Despite her attempt to extricate herself from their verbal altercation, Appellant followed her out of the residence and demanded she return. The victim testified she blacked out as a result of the assault. Appellant fractured the victim's nose and maxillary bone.

**{¶21}** Appellant followed the victim to the hospital and called her from the waiting room. When the victim avoided direct contact with Appellant, he wrote her a letter in which he questioned her recollection of the assault and attempted to manipulate her memory of the events. His efforts at intimidation continued at the trial, where he smirked throughout her testimony and attempted to speak to her. Finally, there is no dispute Appellant was on bond for the crimes charged in 22 CR 84 when he assaulted the victim in this case.

**{¶22}** Accordingly, we find consecutive sentences are necessary to protect the public from future crime and to punish Appellant. Further, consecutive sentences are not disproportionate to the seriousness of Appellant's conduct and to the danger he poses to the public.

**{¶23}** After summarizing the appellate standard of review for sentencing in Ohio, including R.C 2953.08(G), R.C. 2929.14(C)(4), and R.C. 2929.11 and 2929.12, Appellant opines:

> [T]he current standard of review for felony sentencing essentially amounts to no review at all, assuming the trial court stays within whatever sentencing range is established by statute. Such a procedure does not protect the due process rights of the accused with regard to sentencing and appellate review that is actually "meaningful" is required to protect those rights.

(Appellant's Brf., p. 4.)

**{¶24}** Appellate Rule 16(A), captioned "Brief of the appellant," reads in relevant part:

> The appellant shall include in its brief, under headings and in the order indicated, all of the following:
>
> . . .
>
> (7) An argument containing contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to authorities, statutes, and parts of the record on which appellant relies.

**{¶25}** The Eleventh District has twice declined to consider the foregoing two-sentence constitutional challenge to Ohio's appellate standard of review due to the dearth of any analysis and case citation. Ironically, these nearly identical arguments to this case were also made by Appellant's same counsel while representing other criminal defendants on appeal in the Eleventh District. In *State v. Mueller*, 2022-Ohio-3974, (11th Dist.), the Eleventh District observed:

> Appellant additionally argues that our standard of review for felony sentencing fails to provide meaningful appellate review and fails to protect the due process rights of the accused. His argument on appeal, however,

is less than clear and does not include constitutional analysis or citation to relevant authority. This court recently declined to address this exact argument on the basis that an appellate court "should avoid answering constitutional questions unless it is absolutely necessary to do so." *State v. Mizicko*, 11th Dist. Trumbull No. 2021-T-0017, 2022-Ohio-262, ¶ 27-31 (because the appellant "has failed to present a coherent constitutional argument, we decline to address it"), citing *State v. Talty*, 103 Ohio St.3d 177, 814 N.E.2d 1201, 2004-Ohio-4888, ¶ 9.

*Id.* at ¶ 11. We agree Appellant has failed to raise a constitutional challenge to Ohio's appellate standard of review that complies with Appellate Rule 16(A)(7).

{¶26} Accordingly, we find the imposition of the concurrent sentences in this case to be served consecutively with the 22 CR 84 sentence is supported by the record. We further find Appellant's first assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED BY SENTENCING APPELLANT TO THE MAXIMUM SENTENCES AVAILABLE UNDER THE RELEVANT STATUTES.**

## ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT ERRED BY IMPOSING A BLANKET SENTENCE FOR APPELLANT'S CONVICTIONS.**

{¶27} The state argues Appellant's second and third assignments of error are barred by res judicata. The state reasons the trial court reimposed the identical sentence (but for the fact finding to impose consecutive sentences) imposed at the original sentencing hearing and Appellant did not challenge the imposition of maximum sentences or the omnibus sentence in *James I*.

{¶28} "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating . . . any defense or any claimed lack of due process that was raised or could have been raised

Case No. 24 MA 0104

. . . on an appeal from that judgment." *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus. It is well settled that "any issue that could have been raised on direct appeal and was not is res judicata and not subject to review in subsequent proceedings." *State v. Saxon*, 2006-Ohio-1245, ¶ 16.

{¶29} The scope of an appeal from a new sentencing hearing is limited to issues that arise at the new sentencing hearing. *See State v. Fischer*, 2010-Ohio-6238, ¶ 40, reversed on other grounds in *State v. Harper*, 2020-Ohio-2913. The doctrine of res judicata does not bar a defendant from objecting to issues that arise at the resentencing hearing or from the resulting sentence. *State v. Wilson*, 2011-Ohio-2669, ¶ 30.

{¶30} In *Wilson,* the Supreme Court observed:

> A remand for a new sentencing hearing generally anticipates a de novo sentencing hearing. R.C. 2929.19(A). However, a number of discretionary and mandatory limitations may apply to narrow the scope of a particular resentencing hearing. For example, the parties may stipulate to the sentencing court's considering the record as it stood at the first sentencing hearing. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 37. In a remand based only on an allied-offenses sentencing error, the guilty verdicts underlying a defendant's sentences remain the law of the case and are not subject to review. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, at ¶ 26-27. Further, only the sentences for the offenses that were affected by the appealed error are reviewed de novo; the sentences for any offenses that were not affected by the appealed error are not vacated and are not subject to review. [*State v.*] *Saxon*, [2006-Ohio-1245] at paragraph three of the syllabus.

*Id.* at ¶ 15.

{¶31} In *State v. Elmore*, 2017-Ohio-925 (7th Dist.), we vacated Elmore's sentence and remanded the matter for resentencing due to the trial court's failure to set forth facts supporting the imposition of consecutive sentences. At the resentencing hearing, Elmore argued for the first time his felonious assault and having weapons under

disability convictions were allied offenses of similar import and should merge for sentencing purposes. *See generally State v. Ruff*, 2015-Ohio-995 and R.C. 2941.25.

**{¶32}** We held the scope of the resentencing pursuant to the remand order in Elmore's original appeal was limited to the issue of consecutive sentences. Because we did not remand the matter for a de novo sentencing hearing, and Elmore did not assert his convictions were allied offenses of similar import at his original sentencing hearing, we found the issue was barred by res judicata. *Elmore* at ¶ 15.

**{¶33}** Here, the maximum sentences and the omnibus sentence did not *arise* at the resentencing hearing. Further, we did not remand this matter for a de novo sentencing hearing, but instead, for a limited sentencing hearing on the imposition of consecutive sentences. The Ohio Supreme Court has held only the sentences for the offenses that were affected by the appealed error are reviewed de novo; the sentences for any offenses that were not affected by the appealed error are not vacated and are not subject to review. The imposition of Appellant's individual concurrent sentences was not subject to the remand, as only the imposition consecutive to the 22 CR 84 sentence was challenged in *James I*.

**{¶34}** For the foregoing reasons, we find res judicata bars Appellant's second and third assignments of error. The same alleged errors existed at the original sentencing hearing and in the original sentencing entry, but Appellant did not challenge them in *James I*.

## CONCLUSION

**{¶35}** For the foregoing reasons, the trial court's imposition of concurrent sentences in this case to be served consecutively to the 22 CR 84 sentence is affirmed.

Waite, J., concurs.

Hanni, J., concurs.

Case No. 24 MA 0104

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**