[Cite as *State v. James*, 2024-Ohio-4567.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DUSTIN LEE JAMES,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0026**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2022 CR 00353

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed in Part, Reversed in Part and Remanded.

---

*Atty. Gina DeGenova,* Mahoning County Prosecutor*, Atty. Edward A. Czopur,* Assistant
Mahoning County Prosecutor*,* for Plaintiff-Appellee and

*Atty. James R. Wise,* for Defendant-Appellant.

Dated:  September 13, 2024

**Robb, P.J.**

{¶1} Defendant-Appellant Dustin Lee James appeals after being convicted in the Mahoning County Common Pleas Court after a bench and jury trial. As to the bench trial on the charge of having a weapon while under disability, Appellant challenges the sufficiency and the weight of the evidence presented to the court on whether he had possession of the gun. As to the jury trial on the charges of felonious assault and domestic violence, he challenges the sufficiency and the weight of the evidence presented to the jury. Lastly, he points out the trial court failed to make consecutive sentence findings before running the sentence in this case consecutively to a sentence he was already serving in another case. For the following reasons, the trial court and jury verdicts are affirmed, but the judgment of sentence is reversed and the case is remanded for resentencing due to the imposition of a consecutive sentence without consecutive sentence findings.

<u>STATEMENT OF THE CASE</u>

{¶2} On June 19, 2022, Appellant's live-in girlfriend was treated in the emergency room for injuries, which she said Appellant caused that day. He was arrested in the hospital lobby. Five days later, the victim's mother called the Boardman police to report finding a gun in the nightstand while she was cleaning out the apartment for the victim, who moved out after the assault.

{¶3} On July 28, 2022, Appellant was indicted for felonious assault (second-degree felony), having a weapon while under disability (third-degree felony), and misdemeanor domestic violence (first-degree felony). Appellant waived a jury trial on the charge of having a weapon while under disability, and the court heard evidence on this count.

{¶4} At the jury trial on the other two counts, a police officer who responded to the hospital testified he observed swelling and bruising on the victim's nose, a cut on her upper lip, and marks around her right upper arm and forearm. Photographs he took were introduced as evidence. (Tr. 135-138); (St.Ex. 1-6). He described the victim as distraught, upset, in pain, and crying. (Tr. 138). He said the victim attributed the injuries on her arm to Appellant grabbing her. He said, "As far as the injuries on her face, I don't

believe she could recall how she obtained those injuries." (Tr. 144). A second police officer confirmed he observed the victim's facial injuries and injured arm at the hospital. (Tr. 126).

**{¶5}** The victim testified she dated Appellant exclusively and lived with him for seven years. (Tr. 146). On the day of the incident, they continued an argument from the prior night. (Tr. 148). After approximately an hour, Appellant "flipped a table, he was getting angry, and I knew this was usually where he got physical." He was yelling at her, and she decided to flee the apartment hoping she would be safer by the busy road. (Tr. 148-149). However, he followed her outside and continued the argument.

**{¶6}** According to her testimony, "I just remember him threatening me, telling me he was going to count down, if I didn't get inside the apartment he was going to hurt me." (Tr. 149). She then testified, "I just remember pleading with him not to . . . The next thing I recall was [sitting] at the apartment next door and there was like blood all over my shirt, and the guy that lived [with Appellant's cousin] next door was just looking at me and I was crying." (150-151).

**{¶7}** The victim responded in the affirmative when the prosecutor asked if she blacked out. (Tr. 150). When she woke up confused in his cousin's apartment, Appellant "tried to convince" the victim and Appellant's cousin that the victim fell at the single step outside of their apartment. (Tr. 152, 170).

**{¶8}** After the victim voiced that she needed to go to the hospital, they returned to the victim's apartment where Appellant's cousin had her change into clean clothes (instead of wearing her bloodied pajama top and pants). (Tr. 152-153). Appellant gave the victim toilet paper because her nose "was bleeding pretty bad." According to the victim's testimony, when the cousin left to get ready to transport them to the hospital, Appellant said, "well, I really messed up this time" (or "[s]omething along th[ose] lines"). (Tr. 153). When the victim arrived at the emergency room with Appellant at her side, she reported she had been in a fight but testified this was what Appellant told her to say. (Tr. 153, 174).

**{¶9}** Regarding her injuries, the victim testified, "My nose was broken, my orbital nose was broken, and my lip was busted up." When asked if she experienced a lot of pain, she explained, "Yeah, my face was pretty swollen on this side and I was bleeding

from my nose for a while. And even in my lip, still, here, I have a little scar inside of it that hurt, too. And it was hard to brush my teeth for a couple days after that. My mouth was really sore." (Tr. 155).

{¶10} The victim disclosed being ashamed, embarrassed, and fearful to report Appellant's abuse. (Tr. 175). However, just before she was released (with Appellant in the waiting room), she was encouraged by a female friend she was texting "to let them know what actually happened." (Tr. 154-155, 174-175). The victim then did so by telling a nurse and the physician assistant about what happened to her and answering yes when asked if she wanted them to call the police. (Tr. 156). She estimated she had been at the hospital for an hour before disclosing Appellant's abuse. (Tr. 157). When defense counsel asked why she thought Appellant hurt her if she could not remember what happened between his threat and waking up bleeding, the victim replied, "I don't remember it, but I know what happened . . . because I know how he would get. He would get physical with me when he would get like that; so, I know." (Tr. 160).

{¶11} The victim read a letter Appellant sent her from jail. The letter said he would always love her and pleaded with her to call his attorney who wanted to talk to her. In the letter, Appellant also stated, "I never got to explain, but just know this. It didn't happen the way you think. Please remove any thoughts you have of me hitting you over and over again. That's just not the case. Damn the drugs. I hope you realize we weren't ourselves those past few months." (Tr. 159); (St.Ex. 7-8). As to this reference to drugs, the victim said they used fentanyl daily, including the night before the incident; she did not believe the drug would have continued to affect her by the time the incident occurred. (Tr. 160).

{¶12} An emergency room physician assistant testified the victim presented with a lot of swelling to the sides of the face, facial bones, and nasal bridge. Her eyes were also swollen. She had "a very fat lip with a split in the top" and bruising on the left side of her face and her right upper arm and forearm. The CT scan showed a nasal fracture (on the bridge of the nose) and a fractured maxillary bone extending into cheek regions (as pointed to from the stand). The physician assistant described the injury as "Very, very painful" and opined the victim would experience pain until it healed. She prescribed ice and Percocet. (Tr. 210-215).

Case No. 24 MA 0026

{¶13} The physician assistant testified the victim was crying and upset the entire time she spent with her in the emergency room. It was noted a typical emergency room visit lasts at least three hours. This witness said the victim initially said she was assaulted during an argument with a friend; however, near the end of the visit, she admitted she was assaulted by her boyfriend four hours earlier outside of their home. The victim also disclosed Appellant was calling her phone from the waiting room and asking to come see her. When the victim said she did not feel safe returning home with Appellant and asked for help, the physician assistant called the police. (Tr. 208-209, 217). On cross-examination of the physician assistant, testimony was elicited that the victim reported being punched in the face multiple times by Appellant. (Tr. 223-224, 227).

{¶14} In the bench trial portion of the case, the victim testified she did not possess a firearm. She answered in the affirmative upon being asked, "did you know [Appellant] to possess a firearm?" When asked where Appellant would keep his firearm, she disclosed, "In the apartment, sometimes in the room or in the closet." (Tr. 179). On cross-examination, the victim testified she knew there was a weapon at the apartment on the day of the incident, and she noted Appellant bought it from a friend a few years earlier. (Tr. 182). After the incident, the victim returned to their apartment only to gather some necessities before entering a rehabilitation facility, at which time her family cleaned out the apartment. (Tr. 180).

{¶15} The victim's mother testified she went to the apartment to clean out her daughter's belongings and found a gun in the drawer of the nightstand. (Tr. 187-188). She called the police without touching the gun. (Tr. 188).

{¶16} Lastly, a detective testified the victim's mother called on June 24, 2022 to report the gun she found. (Tr. 193-194). The detective knew Appellant was not permitted to possess a firearm due to a pending felony indictment in Mahoning County C.P. No. 22 CR 84, which included two counts of felonious assault. (Tr. 195-196, 198). He identified as exhibits Appellant's March 10, 2022 indictment containing notice that he was prohibited from possessing a weapon due to the pending indictment and the March 22, 2022 arraignment entry showing Appellant had been served with the indictment. (Tr. 198-199); (St.Ex. 20-21). Upon obtaining a search warrant, the detective retrieved the gun and a loaded magazine from the top drawer of the nightstand; the gun's serial number was

scratched off. (Tr. 195-196). The detective said he had the gun test-fired and learned it was operable. (Tr. 197). In any event, the defense stipulated to the firearm's operability. (Tr. 178).

**{¶17}** The court found Appellant guilty of having a weapon while under disability. The jury found Appellant guilty of felonious assault and domestic violence. At sentencing, the court imposed a prison sentence of 8 to 12 years for felonious assault (with lesser concurrent sentences on the other offenses for a total sentence of 8 to 12 years). As the state requested, the court ordered the sentence in this case to be served consecutively to the sentence Appellant was serving in 22 CR 84 (the prior case resulting in Appellant's ban from possessing a weapon). Appellant filed a timely notice of appeal from the February 8, 2024 sentencing entry.

ASSIGNMENT OF ERROR ONE

**{¶18}** Appellant sets forth three assignments of the error, the first of which alleges:

"The Trial Court erred in finding the defendant guilty of having a weapon under disability as there was insufficient evidence in which to convict the defendant and the finding is against the weight of the evidence."

**{¶19}** Sufficiency of the evidence and weight of the evidence are distinct concepts with different tests. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997). Whether the evidence is legally sufficient to sustain a conviction is a question of law dealing with adequacy. *Id.* at 386. An evaluation of witness credibility is not involved in a sufficiency review, as the question is whether the evidence is sufficient if it is believed. *State v. Murphy*, 91 Ohio St.3d 516, 543 (2001). In other words, sufficiency involves the state's burden of production rather than its burden of persuasion. *Thompkins* at 390 (Cook, J., concurring). In reviewing the sufficiency of the evidence, the court views the evidence, including reasonable inferences, in the light most favorable to the prosecution to ascertain whether "any" rational trier of fact could have found the elements of the offense proven beyond a reasonable doubt. *State v. Getsy*, 84 Ohio St.3d 180, 193 (1998), quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (consider all evidence in the light most favorable to the prosecution, including reasonable inferences); *State v. Filiaggi*, 86 Ohio St.3d 230, 247 (1999) (viewing reasonable inferences in favor of the state); *State v. Goff*, 82 Ohio St.3d 123, 138, (1998).

Case No. 24 MA 0026

**{¶20}** The charge of having a weapon while under disability has the following elements: "knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if . . . The person is under indictment for or has been convicted of any felony offense of violence. . ." R.C. 2923.13(A)(2) (unless the disability was removed by law or legal process). A firearm is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant" and "includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." *See* R.C. 2923.11(B)(1). Felonious assault is a felony offense of violence. R.C. 2901.01(A)(9)(a); R.C. 2903.11(D)(1)(a).

**{¶21}** Regarding the firearm, a detective testified the firearm was test-fired, and the defense stipulated to the operability of the firearm. Appellant's pending indictment for a prior felonious assault case containing notice of the weapons disability was admitted into evidence at the bench trial along with the entry showing Appellant was served with the indictment. In any case, he does not contest these elements.

**{¶22}** "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Because a defendant's intent dwells in his mind, the surrounding facts, circumstances, and resulting inferences are all used to demonstrate intent. *State v. Treesh*, 90 Ohio St.3d 460, 485 (2001).

**{¶23}** Possession satisfies the "have" element in the statute defining the offense of having weapons while under disability. *State v. Anderson*, 2023-Ohio-3335, ¶ 12 (7th Dist.) (reopening denied). "[A] person can 'have' an object through immediate physical possession or constructive possession, which involves dominion and control." *State v. Anderson*, 2023-Ohio-945 (7th Dist.), ¶ 55, citing *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976).

**{¶24}** As set forth in a case cited by Appellant, "Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession . . . To establish constructive possession, the state must prove that the defendant was conscious of the object, and able to exercise dominion or control over it even though that object may not be within his immediate physical possession." *State*

*v. St. John*, 2009-Ohio-6248, ¶ 19 (7th Dist.), quoting *State v. Kingsland*, 2008-Ohio-4148, ¶ 13 (4th Dist.) and citing *State v. Hankerson*, 70 Ohio St.2d 87, 90-91 (1982).

**{¶25}** Appellant claims the state failed to present sufficient evidence of possession in attempting to prove the "have" element. He emphasizes the following holding: "the mere fact that property is located within premises under one's control does not, of itself, constitute constructive possession. It must also be shown that the person was conscious of the presence of the object." *Hankerson* at 87, 91 (affirming the conviction even after applying a now-rejected rule requiring circumstantial evidence to be irreconcilable with any reasonable theory of innocence). Notably, in addition to being valuable in proving the mens rea of knowingly, "circumstantial evidence can be relied upon to establish constructive possession." *Anderson*, 2023-Ohio-945, at ¶ 55 (7th Dist.), quoting *State v. Floyd*, 2019-Ohio-4878, ¶ 16 (7th Dist.). And, circumstantial evidence inherently possesses the same probative value as direct evidence. *Treesh*, 90 Ohio St.3d at 485 (as opposed to the former circumstantial evidence test applied in *Hankerson*).

**{¶26}** Here, Appellant and the victim lived together as boyfriend and girlfriend in a small one-bedroom apartment. (Tr. 149-150, 179). Five days after Appellant's arrest, the victim's mother found the firearm in the top drawer of the nightstand by their bed (while she was cleaning out the apartment for the victim who moved in with her after the assault and Appellant's arrest). (Tr. 187-188). The victim's mother called the police who recovered the gun the same day she found it. (Tr. 193-196).

**{¶27}** The victim testified she only returned to the apartment briefly after Appellant's arrest to gather necessities (before she entered rehab and moved to her mother's house) and she did not take a gun with her to the apartment. (Tr. 180). She specifically testified Appellant kept a firearm at their apartment. (Tr. 179). She noted Appellant bought the firearm from a friend a few years earlier and kept it in a room or a closet depending on where he moved it. (Tr. 179-182-183). She specifically testified that she knew there was a weapon at the apartment on the day of the incident. (Tr. 182). She also declared that she did not possess a firearm. (Tr. 179).

**{¶28}** The evidence and testimony showed Appellant owned the recovered gun and was consciously aware of its presence in their apartment where he maintained it and exercised dominion and control over it. Upon viewing the evidence, including reasonable

inferences, in the light most favorable to the prosecution, some rational juror could find beyond a reasonable doubt that Appellant knowingly possessed the firearm in the nightstand. Appellant's sufficiency argument is without merit.

**{¶29}** Weight of the evidence concerns the effect of the evidence in inducing belief, and our review evaluates "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Thompkins*, 78 Ohio St.3d at 387. The appellate court considers whether the state met its burden of persuasion. *Id.* at 390 (Cook, J., concurring) (as opposed to the state's burden of production involved in a sufficiency review). When a defendant claims the conviction is contrary to the manifest weight of the evidence, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Lang*, 2011-Ohio-4215, ¶ 220, citing *Thompkins* at 387.

**{¶30}** Assigning weight to evidence and credibility to witnesses are tasks primarily left to the trier of the facts. *State v. Hunter*, 2011-Ohio-6524, ¶ 118. The trier of fact occupies the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "We therefore generally proceed under the premise that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, we do not choose which one we believe is more credible." *State v. Carter*, 2017-Ohio-7501, ¶ 105 (7th Dist.), citing *State v. Gore*, 131 Ohio App.3d 197, 201 (7th Dist. 1999).

**{¶31}** Upon reviewing the entire record, we find this not an exceptional case where the fact-finder clearly lost its way and created a manifest miscarriage of justice when weighing the evidence and assigning credibility. We incorporate the facts recited in our statement of the case and our sufficiency review above. The trial court saw and heard the victim's testimony on Appellant's gun and was entitled to believe her testimony. The court was also entitled to believe the testimony of the victim's mother that she found the gun in the nightstand and did not touch it. The direct and circumstantial evidence made

a strong case on the element of possession. The trial court's finding of guilt on the count of having a weapon while under disability was not contrary to the manifest weight of the evidence. This assignment of error is overruled.

ASSIGNMENT OF ERROR TWO

{¶32} Appellant's second assignment of error contends:

"The Trial Court erred in finding the defendant guilty of felonious assault and domestic violence as there was insufficient evidence in which to convict the defendant and the finding is against the weight of the evidence."

{¶33} While the prior assignment of error challenged the evidence supporting the trial court's verdict after the bench trial portion of the case, this assignment of error challenges the evidence supporting the jury verdict on felonious assault and domestic violence. The charge of felonious assault has the following elements: "knowingly . . . Cause serious physical harm to another or to another's unborn. . ." R.C. 2903.11(A)(1). Serious physical harm includes "[a]ny physical harm" involving: a permanent partial or total incapacity or "some temporary, substantial incapacity;" a permanent disfigurement or "some temporary, serious disfigurement;" and "acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(c)-(e). The charge of domestic violence has the following elements: "knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(A),(F)(1)(a)(i),(2) (family or household member includes a person living as a spouse who is residing or has resided with the offender; person living as a spouse includes a person who is cohabiting with the offender). We incorporate the relevant law on sufficiency, weight, mens rea, and circumstantial evidence set forth under the prior assignment of error.

{¶34} Appellant challenges the sufficiency of the evidence on the question of what or who caused the victim's injuries. In doing so, Appellant says the following portion of his letter to the victim should not be construed as an admission: "I never got to explain, but just know this. It didn't happen the way you think. Please remove [any] thoughts you have of me hitting you over and over again. That's just not the case. Damn the drugs. I hope you realize we weren't ourselves those past few months." (Tr. 159); (St.Ex. 7-8).

Regardless of the available constructions of Appellant's letter, there was additional evidence as to the cause of the victim's injuries.

**{¶35}** Appellant emphasizes the victim's lack of memory of the events between Appellant flipping over a table and her waking up at the neighboring apartment. He glosses over the words and actions occurring outside of the apartment. Contrary to Appellant's argument, evidence of an assault is not legally inadequate merely because a victim cannot recall the strikes as they occurred (possibly due to blacking out). In fact, criminal trials often proceed without a victim even testifying. Here, as the state points out, the context and sequence of events relayed through the victim's testimony provides important circumstantial evidence. *See, e.g., State v. Donaldson*, 2023-Ohio-3538, ¶ 18 (6th Dist.) (rejecting sufficiency and weight challenges where the victim was speaking with a lone individual and was hit from behind just as he turned away from that individual). Again, circumstantial evidence inherently possesses the same probative value as direct evidence. *Treesh*, 90 Ohio St.3d at 485.

**{¶36}** When they woke up on the day of the incident, Appellant continued an argument from the prior night. They lived together for many years, and due to the victim's past experience with Appellant's conduct when he was angry, she feared he would use physical force against her while he was yelling at her. According to the victim's trial testimony, after approximately an hour, Appellant "flipped a table, he was getting angry, and I knew this was usually where he got physical." (Tr. 167). She thus fled the apartment hoping for safety by the busy road. (Tr. 148-149). However, he followed her outside to continue the argument. The victim recounted, "I just remember him threatening me, telling me he was going to count down, if I didn't get inside the apartment he was going to hurt me." (Tr. 149, 167). She also remembered "pleading with him not to." (Tr. 150).

**{¶37}** As the victim initially explained, "The next thing I recall was [sitting] at the apartment next door and there was like blood all over my shirt . . . and a little bit on my pants." She said she was crying as a man who lived with Appellant's cousin/neighbor looked at her. She responded in the affirmative when the prosecutor asked if she had blacked out. (Tr. 150-151).

– 12 –

**{¶38}** During cross-examination, the victim indicated Appellant "literally grab[bed]" her while he was threatening to count down and hurt her, which was consistent with the bruises on her upper arm and forearm. (Tr. 168). A police officer confirmed the victim attributed the injuries on her arm to Appellant grabbing her. (Tr. 144). Her injuries were severe enough for Appellant to accompany her to the emergency room where it was discovered that she had broken bones in her nose and cheeks with facial swelling and bruises. She was crying and in pain. She was given a Percocet in the emergency room and provided with a prescription of Percocet for her future pain, which the physician assistant said would continue through the healing of the bones.

**{¶39}** The victim's testimony also mentioned Appellant "tried to convince" her (and Appellant's cousin) that she fell at the single step outside of their apartment. (Tr. 152, 170). Furthermore, just before they left for the hospital, Appellant said "[s]omething along the lines of well, I really messed up this time." (Tr. 153). Viewing the evidence and reasonable inferences in the light most favorable to the prosecution, it is clear that some rational juror could conclude Appellant knowingly caused serious physical harm to the victim.

**{¶40}** As for the weight of the evidence, in addition to incorporating the law in the prior assignment of error (on evaluating whether a verdict is contrary to the manifest weight of the evidence), we point out *where a criminal case has been tried by a jury*, *only a unanimous appellate court can reverse on manifest weight of the evidence ground*s. *Thompkins*, 78 Ohio St.3d at 389, citing Ohio Const., art. IV, § 3(B)(3). The power of the court of appeals to sit as the "thirteenth juror" is limited in order to preserve the jury's role with respect to issues surrounding the credibility of witnesses and the weight of the evidence. *Id.* at 387.

**{¶41}** Appellant suggests the victim lacks credibility because she did not report Appellant as the cause of her injuries until after texting with her friend from the hospital. Contrary to Appellant's construction of the testimony, the victim did not imply the friend told the victim to blame Appellant. Rather, the victim testified she was worrying about returning to Appellant upon her release from the emergency room (with Appellant in the waiting room), and the female friend she was texting encouraged her "to let them know what actually happened." (Tr. 154-155, 174-175).

{¶42} Appellant also challenges the victim's credibility due to her inability to recall the injuries as they occurred. Although the victim told the physician assistant that Appellant punched her multiple times in the face, the victim testified at trial that she could not remember receiving the strikes to the face, believing she blacked out. The jury occupied the best position from which to judge the victim's credibility. They witnessed her gestures, voice inflection, and demeanor in finding her account credible and in agreeing with her reasonable belief as to how her injuries occurred based on Appellant's behavior and statements before and after her injuries were sustained. It was within the jury's province to evaluate the testimony and assign weight to the direct and circumstantial evidence in determining Appellant knowingly caused serious physical harm to the victim. Appellant's second assignment of error is overruled.

## ASSIGNMENT OF ERROR THREE

{¶43} Appellant's final assignment of error provides:

"Defendant was not properly sentenced to consecutive sentences by the trial court."

{¶44} The court sentenced Appellant to 8 to 12 years in prison for felonious assault and lesser concurrent sentences for the other offenses, for a total sentence of 8 to 12 years. As the state requested, the court ran the sentence in this case consecutively with the sentence Appellant was serving in Mahoning County C.P. No. 22 CR 84, the aforementioned felonious assault case (among other offenses). In requesting the current sentence to be served consecutively to 22 CR 84, the state pointed out Appellant committed the current offenses while out on bond in the other case and opined he failed to take responsibility for his actions over the past two years. (Tr. 3-4). The state mentioned Appellant's "completely inappropriate" trial conduct, noting he made faces during the victim's testimony and called out to her as she walked away from the stand. Lastly, the state said Appellant had a "significant" criminal history, including two prior felonies in addition to those in 22 CR 84. (Tr. 4).

{¶45} Notably, after mentioning Appellant committing these offenses while on bond in 22 CR 84, the prosecutor informed the trial court, "[this] is one of the findings the court can make for consecutive sentences being appropriate." The court replied, "I don't need to make that finding on two separate cases." The prosecutor responded, "Just –

I'm just doing that to cover myself, Your Honor." (Tr. 3). The court did not make any consecutive sentence findings at the sentencing hearing or in the sentencing entry.

**{¶46}** On appeal, Appellant contends the court was in fact required to make consecutive sentence findings when imposing the sentence in this case consecutively to the sentence he was already serving. The state concedes the trial court committed reversible error by failing to make consecutive sentence findings in this situation, agreeing we should remand for resentencing on this issue. *Citing State v. Johnson*, 2023-Ohio-2008, ¶ 8-9, 25-39 (6th Dist.) (where the court applied R.C. 2929.14(C) and held the consecutive sentence findings were supported by the record after the trial court imposed a prison term and ordered the defendant to serve it consecutively to the sentence he was serving from another county).

**{¶47}** As the Supreme Court has pointed out, there is a statutory presumption in favor of concurrent sentences. *State v. Bonnell*, 2014-Ohio-3177, ¶ 23. "*Except as provided in* division (B) of this section, *division (C) of section 2929.14*, or division (D) or (E) of section 2971.03 of the Revised Code, *a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state*, another state, or the United States." (Emphasis added.) R.C. 2929.41(A).[1]

**{¶48}** Division (C) of R.C. 2929.14, the relevant statutory provision cited in R.C, 2929.41(A), provides:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

---

[1] Besides discussing misdemeanors, the cited division (B) states: "If a court of this state imposes a prison term upon the offender for the commission of a felony and a court of another state or the United States also has imposed a prison term upon the offender for the commission of a felony, the court of this state may order that the offender serve the prison term it imposes consecutively to any prison term imposed upon the offender by the court of another state or the United States." R.C. 2929.41(B)(2). The cited divisions (D) and (E) of R.C. 2971.03 deal with life sentences.

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶49} When imposing consecutive sentences, the trial court must make the required findings at the sentencing hearing and in the sentencing entry. *Bonnell* at ¶ 19, 37 (remanding for resentencing while noting a nunc pro tunc entry can be used if the consecutive sentence findings were made at sentencing and only missing from the entry).

{¶50} The *Bonnell* Court also generally stated, "With exceptions not relevant here, if the trial court does not make the factual findings required by R.C. 2929.14(C)(4), then 'a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States.'" *Id.* at ¶ 23, citing R.C. 2929.41(A). The Supreme Court thereafter made the following observations in a case where the trial court ordered a new sentence to run consecutively to a prior sentence imposed in another county:

In Ohio, multiple sentences of imprisonment are generally presumed to run concurrently, R.C. 2929.41(A), except in certain circumstances not applicable here, see, e.g., R.C. 2929.14(C)(1) through (3). A trial court must make particularized findings to justify its use of discretion to impose consecutive sentences. R.C. 2929.14(C)(4). This also means that a trial court may make the necessary findings and "order a prison sentence to be

served consecutively to a prison sentence previously imposed on the same
offender by another Ohio court." *State v. Bates*, 118 Ohio St.3d 174, 2008-
Ohio-1983, 887 N.E.2d 328, ¶ 1.

*State v. Jones*, 2022-Ohio-4485, ¶ 12.

**{¶51}** These conclusions are based on the language of R.C. 2929.41(A) directing the court to R.C. 2929.14(C) when choosing not to run "a prison term . . . or sentence of imprisonment . . . concurrently with any other prison term . . . or sentence of imprisonment imposed by a court of this state . . ." R.C. 2929.41(A).[2]

**{¶52}** Where a sentence was imposed consecutively to a prison term the defendant was already serving, this district observed, "consecutive sentencing findings are required when the sentences are imposed in separate cases." *State v. Hill*, 2014-Ohio-1965, ¶ 6, 20 (7th Dist.), *abrogated on other grounds in State v. Marcum*, 2016-Ohio-1002 (former change to standard of review). We then remanded for resentencing due to the failure to make consecutive sentence findings at the sentencing hearing, based in part on the imposition of the sentence consecutively to a previously imposed prison sentence the defendant was already serving. *Id.* at ¶ 3, 5, 18-34. We have consistently concluded that consecutive sentence findings must be made at the sentencing hearing if the trial court orders the defendant to serve his current and prior sentences consecutively. *State v. Patterson*, 2019-Ohio-881, ¶ 25-26 (7th Dist.) (the sentence "is clearly and convincingly contrary to law" in the absence of such findings), citing *State v. Hudson*, 2017-Ohio-645, ¶ 44 (7th Dist.).

**{¶53}** Other districts have also reversed for resentencing due to a trial court's failure to make consecutive sentence findings where the individual prison terms on the

---

[2] "Although the consecutive sentence at issue was not for multiple convictions within a single criminal case, but rather, was for multiple convictions in totally distinct and separate criminal proceedings, the statute has been interpreted to apply in this type of situation." *State v. Love*, 2002-Ohio-7178, ¶ 6 (7th Dist.) (addressing the R.C. 2929.14(E)(4), the former equivalent statutory division on consecutive sentence findings, where the trial court failed to make findings when ordering the sentence to be served consecutively to an earlier sentence imposed in another county), citing *State v. Gillman*, 2001-Ohio-3968 (10th Dist.) (consecutive sentence statute will be read so as to "give the trial court the discretion to order a sentence to be served consecutively to any previous or subsequent sentence when the court makes the required findings indicating that the prison terms should be served consecutively" and the statute's applicability does not depend on "multiple prison terms for multiple offenses to be imposed in the same proceeding").

offenses before the court were run concurrently but that total sentence was run consecutively to a sentence previously imposed in another Ohio case. *State v. Smith*, 2022-Ohio-257, ¶ 1-3, 26-31 (11th Dist.) ("Courts have also held that the trial court is required to make the statutory findings when imposing consecutive sentences even when one of the sentences was imposed in a separate case."), citing *State v. Richmond*, 2017-Ohio-2656, ¶ 26 (8th Dist.).

**{¶54}** In one case, the state specifically argued consecutive sentencing findings did not apply because the court was not sentencing the defendant on "multiple counts" as the term was used in the former statutory equivalent to R.C. 2929.14(C). *State v. Griffith*, 2002-Ohio-6142, ¶ 37 (4th Dist.) (where the sentence for the sole offense on appeal was run consecutively to a sentence in a prior case already being served). The court rejected this interpretation as contrary to the plain language and the "spirit" of the relevant sentencing laws. *Id.* at ¶ 38.

**{¶55}** To the contrary, the state here concedes the error in imposing the sentence in the case at bar consecutively to a prior sentence imposed in 22 CR 84. Based on the Supreme Court holdings and our case law, we agree with the parties that the trial court was required to make consecutive sentence findings at the sentencing hearing and incorporate those findings into the sentencing entry in order to impose the sentence in the current case consecutively to an earlier case on which he was already imprisoned. On this basis, Appellant is entitled to resentencing, and his third assignment of error has merit.

**{¶56}** For the foregoing reasons, the trial court and jury verdicts are affirmed, but the judgment of sentence is reversed and the case is remanded for resentencing due to the lack of consecutive sentence findings at the sentencing hearing and in the judgment entry.


Waite, J., concurs.

Dickey, J., concurs.


Case No. 24 MA 0026

---

For the reasons stated in the Opinion rendered herein, it is the final judgment, and order of this Court that the trial court and jury verdicts are affirmed. The judgment of sentence is reversed and the case is remanded for resentencing due to the lack of consecutive sentence findings at the sentencing hearing and in the judgment entry, for further proceedings according to law and consistent with this Court's Opinion.  Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**