[Cite as *State v. Talbert*, 2025-Ohio-4922.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JUSTIN R. TALBERT,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 CO 0012

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 23 CR 575

**BEFORE:**
Mark A. Hanni, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito J. Abruzzino*, Columbiana County Prosecutor, and *Atty. Steven V. Yacovone*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Edward F. Borkowski, Jr.*, for Defendant-Appellant.

Dated:  October 27, 2025

**HANNI, J.**

{¶1} Defendant-Appellant Justin R. Talbert appeals from a Columbiana County Common Pleas Court judgment accepting his guilty plea and sentencing him to 10-13 years in prison. Appellant contends his guilty plea was invalid, the trial court should have granted his motion to withdraw his guilty plea, and the trial court's imposition of a consecutive sentence was contrary to law.

{¶2} We hold that the transcript of the plea colloquy establishes that the trial court strictly complied with informing Appellant of his rights and the waiver of rights upon pleading guilty. Further, while motions to withdraw guilty pleas should be "freely and liberally" granted, the trial court did not abuse its discretion by denying Appellant's motion to withdraw his guilty plea. The trial court held a hearing on the motion and reasonably applied the *Fish* factors. Finally, the trial court considered the relevant sentencing factors and made the requisite findings to impose felony sentences and a consecutive sentence.

{¶3} In 2022, Wellsville's middle school principal reported to police that Appellant, a 23-year-old custodian and volunteer track coach, sent photos of his penis to middle school girls through Snapchat. During the police investigation, one of the 12-year-old girls disclosed that Appellant inappropriately touched her. Another disclosed that Appellant had sexually penetrated her.

{¶4} On October 11, 2023, Appellant was indicted on: one count of first-degree felony rape in violation of R.C. 2907.02(A)(1)(B); one count of second-degree felony sexual battery in violation of R.C. 2907.03(A)(7); one count of third-degree felony gross sexual imposition (GSI) in violation of R.C. 2907.05(A)(4); and one count of third-degree felony importuning in violation of R.C. 2907.07(A). A status conference and jury trial were scheduled for April 2024. The trial was subsequently rescheduled.

{¶5} On September 9, 2024 at a final status conference, the parties reported that they had reached a plea agreement. Appellant agreed to enter a guilty plea to one count of second-degree felony sexual battery and one count of third-degree felony GSI. The State agreed to recommend a six-year prison term for sexual battery and a four-year consecutive prison term for GSI.

{¶6} The trial court held the plea colloquy that same day. The hearing transcript shows that Appellant conferred off the record with counsel a number of times. He conferred off the record after the court asked whether he intended to change his plea to guilty. (Plea Hg., 5). Appellant affirmed his intention after speaking with counsel. (Plea Hg., 5). Appellant also conferred off the record with counsel after the trial court asked if he was changing his plea voluntarily and of his own free will. (Plea Hg., 5). He initially answered, "No, Your Honor." (Tr. Plea Hg., 6). The trial court repeated, "Is it of your own free will?" (Tr. Plea Hg., 6). Appellant then answered, "Oh, yes. Yes, Your Honor." (Tr. Plea Hg., 6).

{¶7} Appellant answered "no" when the trial court asked if he was threatened or forced to change his plea, or whether he was made any promises in exchange for his guilty plea. (Tr. Plea Hg., 6). Appellant also stated he understood and signed the plea agreement and completed the response to court form. (Tr. Plea Hg., 6-7).

{¶8} The trial court reviewed the elements of the two offenses to which Appellant was pleading guilty and asked if he understood them. (Tr. Plea Hg., 8-9). Appellant affirmed. (Tr. Plea Hg., 9). The trial court reviewed each right Appellant was waiving by pleading guilty and Appellant affirmed his understanding of each. (Tr. Plea Hg., 9, 14-15). The trial court asked if Appellant understood that by pleading guilty, he was completely admitting he committed the offenses to which he was pleading guilty. (Tr. Plea Hg., 9). Appellant stated he understood. (Tr. Plea Hg., 10). He also stated he understood the trial court could immediately proceed to sentencing after entering the judgment of Appellant's guilt and that he was waiving certain appellate rights by pleading guilty. (Tr. Plea Hg., 10-11).

{¶9} Appellant again conferred with counsel off the record before stating that he understood the possible minimum and maximum prison terms the trial court could impose for sexual battery. (Tr. Plea Hg., 11). He conferred with counsel again before confirming he understood the minimum and maximum prison terms he was facing on the GSI charge if he pled guilty. (Tr. Plea Hg., 11). Appellant also stated he understood the fines he was facing, his registration as a Tier III sex offender, restitution, and post-release control. (Tr. Plea Hg., 12-14).

{¶10} The trial court asked if he had any questions, and Appellant responded he did not. (Tr. Plea Hg., 15). The trial court asked Appellant how he pled to each of the offenses, and Appellant responded, "guilty." (Tr. Plea Hg., 16).

{¶11} On November 8, 2024, the trial court was set to proceed with a sentencing hearing. However, Appellant stated he intended to hire new counsel. The court rescheduled the hearing for November 25, 2024. Appellant's new counsel filed a notice of appearance on November 25, 2024 and requested a continuance. The court granted the request and rescheduled the sentencing for January 3, 2025.

{¶12} On December 31, 2024, Appellant, through his new counsel, filed a motion to withdraw his guilty plea. The State responded, and the trial court held a hearing on the motion on February 21, 2025. At the hearing, Appellant submitted a psychological evaluation dated February 12, 2025 that was conducted by Dr. John F. Grzebieniak, Ph.D. of The Counseling Center. Appellant also testified.

{¶13} On February 21, 2025, the trial court issued a judgment entry denying Appellant's motion to withdraw his guilty plea.

{¶14} On March 14, 2025, the trial court held the sentencing hearing. (Tr. Sent. Hg.). One of the victims' mother spoke and a victim wrote a victim impact statement. (Tr. Sent. Hg., 9-11). Defense counsel provided a sentence recommendation and noted Appellant's lack of criminal history, his mental status, and his remorse. (Tr. Sent. Hg., 12-13). Appellant apologized to the victims. (Tr. Sent. Hg., 13-14). The trial court sentenced Appellant to a total of 10-13 years in prison, which included 6-9 years in prison for sexual battery, to be served consecutively to 48 months for the GSI conviction.

{¶15} On March 17, 2025, the trial court issued its judgment entry of sentence. The trial court denied Appellant's request for probation and sentenced him to 6-9 years in prison for sexual battery, with a consecutive 48 months in prison for GSI.

{¶16} On April 14, 2025, Appellant filed a notice of appeal asserting three assignments of error. In his first assignment of error, Appellant asserts:

**THE TRIAL COURT ERRED BY ACCEPTING APPELLANT'S GUILTY PLEA WHEN IT WAS NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY MADE.**

Case No. 25 CO 0012

{¶17} Appellant concedes the trial court complied with Crim.R. 11 by advising him of his constitutional and non-constitutional rights before he pled guilty. He also acknowledges the court properly informed him of the consequences of pleading guilty.

{¶18} However, Appellant contends he unknowingly, unintelligently, and involuntarily entered a guilty plea. He cites his testimony at the motion to withdraw hearing that he had an Individual Education Plan (IEP) in high school, which allowed him additional time to take tests due to his difficulty understanding information. Appellant asserts that while his counsel presented to him all of the information about entering a guilty plea, he had only minutes before the plea colloquy to comprehend this information. As evidence of his inability to understand, Appellant cites the plea colloquy transcript which shows that he and his counsel conferred off the record many times. He explains they did this because he kept asking his counsel what to say and his counsel merely told him to say "yes" or "no."

{¶19} The United States Constitution and the Ohio Constitution require a defendant's plea to be made knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). Criminal Rule 11(C)(2) requires the trial court in felony cases to engage in a colloquy with the defendant and do all of the following:

(a) Determin[e] that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Inform[] the defendant of and determin[e] that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Inform[] the defendant and determin[e] that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the

defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶20}** The trial court must strictly comply with informing the defendant of his constitutional rights under Crim.R. 11(C)(2)(c) and the waiver of those rights upon entering a guilty plea. *State v. Veney*, 2008-Ohio-5200, ¶ 21. If the trial court fails to strictly comply with these requirements, the defendant's plea is invalid. *Id*. at ¶ 31.

**{¶21}** The trial court must also inform the defendant of the non-constitutional rights set forth in Criminal Rule 11(C)(2)(a) and (b). *Id*. at ¶ 10-13. The trial court must substantially comply with informing a defendant of these rights. *Id.* at ¶ 14-15. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Veney* at ¶ 15, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

**{¶22}** At Appellant's change of plea hearing, the trial court clearly informed him of all of his constitutional and non-constitutional rights. The transcript shows the trial court reviewed the elements of the offenses to which Appellant was pleading guilty, asked him if he understood those elements, and Appellant affirmed his understanding. (Plea Tr., 8-9). The trial court asked if Appellant understood his guilty plea constituted a complete admission to the offenses and Appellant responded he understood. (Plea Tr., 9-10).

**{¶23}** The trial court also informed Appellant he was waiving certain constitutional rights by pleading guilty. (Plea Tr., 14). The court identified each of those rights and asked Appellant if he understood each right and its waiver by entering a guilty plea. (Plea Tr., 14-15). Appellant responded he understood. (Plea Tr., 14-15). The trial court also informed Appellant of the maximum penalties, fines, and costs for both offenses, his requirement to register as a Tier III sex offender, and post-release control requirements. (Plea Tr., 10-14). The trial court asked Appellant to state his plea as to each charge and Appellant stated that he was guilty. (Plea Tr., 15-16).

**{¶24}** It is true Appellant conferred with his counsel off the record after some of the trial court's questions and information. However, after doing so, Appellant responded to each of the court's questions and confirmed his desire to plead guilty. Appellant did not notify the court or his counsel that he did not understand any of the information provided to him. He asked no questions, even when given the opportunity to do so.

Further, Appellant did not request more time from the court or his counsel to digest the information presented to him before entering a guilty plea.

{¶25} We find that Appellant entered his plea knowingly, voluntarily, and intelligently. Appellant conceded that the court complied with Crim.R. 11(C)(2). Further, the record confirms the trial court's strict compliance with the Rule. These findings, and Appellant's responses to the court that he understood his rights and their waiver, and still wished to plead guilty, support our conclusion.

{¶26} Accordingly, Appellant's first assignment of error lacks merit and is overruled.

{¶27} In his second assignment of error, Appellant asserts:

**THE TRIAL COURT ERRED BY DENYING APPELLANT'S PRETRIAL MOTION TO WITHDRAW HIS GUILTY PLEAS.**

{¶28} Appellant contends the trial court erred by denying his presentence motion to withdraw his guilty plea. He asserts that he has maintained his innocence and he entered a guilty plea only because of fear and panic that he would receive a lengthier sentence if he went to trial and lost. He submits that fear and panic clouded his judgment and prevented him from understanding his rights and their waiver by pleading guilty. He contends his learning disabilities also prevented him from fully understanding a guilty plea and its consequences.

{¶29} Appellant emphasizes the "freely and liberally" standard for granting presentence motions to withdraw. He reviews the factors under *State v. Fish,* 104 Ohio App.3d 236, 240 (1st Dist. 1995), and concludes they favored permitting withdrawal. He contends he lacked competent representation because counsel said nothing more than "yes" or "no" when Appellant asked him questions and what to say at the plea colloquy. He further asserts the record showed he did not understand the charges and potential sentences because he was presented with the plea agreement only minutes before the colloquy and he needed more time to digest the material. He submits this is supported by the fact that his high school IEP afforded him extra time to comprehend materials. He points to the confusion at the plea colloquy about his maximum potential sentences when the trial court made a mistake, sought to correct the mistake, and he answered "yes"

before the court even finished its sentence. He also notes he conferred with counsel and simply answered "yes" because counsel instructed him to do so.

**{¶30}** Appellant concedes he received a full plea colloquy hearing, but submits the record showed he did not understand the nature of the hearing. Appellant also asserts the trial court conducted only a limited hearing on his withdrawal motion.

**{¶31}** As to the other *Fish* factors, Appellant alleges he had valid reasons for his motion to withdraw due to his comprehension and learning difficulties, which were buttressed by his counsel's claims that he had a borderline IQ and a child-like mind. He asserts that once he had additional time to consider what had happened during the plea colloquy, he realized he no longer wished to plead guilty.

**{¶32}** Appellant also contends his motion to withdraw was timely because it was filed two-and-a-half months before sentencing. He submits that prejudice to the State is not a factor because the trial court found at the hearing that it could not speak on behalf of the prosecution as to prejudice.

**{¶33}** The trial court did not abuse its discretion by denying Appellant's motion to withdraw his guilty plea. "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1. A defendant does not have an absolute right to withdraw a guilty plea before sentencing, but a presentence motion to withdraw a guilty plea should be freely and liberally granted. *State v. Xie*, 62 Ohio St.3d 521, 527 (1992).

**{¶34}** "A trial court must conduct a hearing to determine whether there is a reasonable legitimate basis for the withdrawal of the plea." *Id*. at paragraph one of the syllabus. Granting a motion to vacate a guilty plea "is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *State v. Smith*, 49 Ohio St.2d 261, 264 (1977). In evaluating whether a court abused its discretion, we consider whether the trial court's ruling was unreasonable, arbitrary, or unconscionable. *Xie* at 527, quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

**{¶35}** This Court has adopted a list of nine non-exhaustive factors to be weighed in reviewing a decision on a presentence motion to withdraw a plea: (1) whether the state

will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) whether the defendant understood the nature of the charges and potential sentences; (5) the extent of the hearing on the motion to withdraw; (6) whether the trial court gave full and fair consideration to the motion; (7) whether the timing of the motion was reasonable; (8) the reasons for the motion; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge. *State v. Scott*, 2008-Ohio-5043, ¶ 13 (7th Dist.); *see also State v. Fish*, 104 Ohio App.3d 236, 240, (*Fish* lists eight factors). Consideration of the factors involves a balancing test, and no single factor is conclusive. *Scott* at ¶ 13.

{¶36} Evaluating the *Fish* factors, we find that the trial court did not abuse its discretion by denying Appellant's motion to withdraw his guilty plea. As to the first *Fish* factor, the State would suffer prejudice by the plea withdrawal. The State indicated in its response to the motion to withdraw that the victims would have to relive the trauma of the events, one of the victims moved out of the vicinity, one of the witnesses moved out of state, and at least one of the medical professionals left their position. These facts favor prejudice to the State.

{¶37} Regarding the second factor, Appellant had competent representation. While he complained his prior counsel said nothing more than "yes" or "no" at the plea colloquy, Appellant told the trial court at that hearing that he was satisfied with counsel. (Plea Tr., 7). Further, each of Appellant's counsel were experienced and they filed relevant motions and presented adequate representation.

{¶38} As to the fourth factor, the transcript shows that Appellant understood the nature of the charges and his potential sentences. Appellant asserts that he pled guilty out of fear and panic and submits that his intellectual difficulties prevented him from understanding the plea colloquy. He cites the numerous times he and his counsel conferred off the record and he cites the psychological evaluation report by The Counseling Center. That report indicated that Appellant achieved a full-scale IQ of 77-89 on Wechsler Abbreviated Scale of Intelligence, Second Edition. This is considered borderline to low-average intellectual functioning. Appellant also noted he had an IEP in school that allowed him additional time to read and comprehend.

{¶39} At the motion to withdraw hearing, Appellant stated he graduated from high school and earned As and Bs his senior year with the additional time given him under the IEP. (Motion Hg., 14-17). He indicated he worked at various jobs after high school and is married with a daughter. (Motion Hg., 15). He acknowledged that with assistance, he could understand things. (Motion Hg., 15-16). Appellant also testified he conferred with his counsel before and during the hearing and counsel read him the plea agreement and judicial advice form. (Motion Hg., 16).

{¶40} While he stated his counsel read through the forms quickly and he had only moments to digest the materials, Appellant agreed the court read through these documents with him again at the colloquy. (Motion Hg., 16). The plea colloquy transcript supports a thorough and informative review of those documents by the court with Appellant. Appellant affirmed at the plea hearing that he understood the nature of the charges against him and his potential sentence. He asked no questions and did not inform the court that he did not understand. He did not request additional time to understand the changing of his plea and he did not request to stop, delay, or end the hearing. The transcript of the plea colloquy does not support a finding that Appellant's plea was unknowingly, involuntarily, or unintelligently made.

{¶41} As to the third, fifth and sixth *Fish* factors, the trial court held full hearings on Appellant's guilty plea and his motion to withdraw his guilty plea and it gave full and fair consideration to Appellant's motion to withdraw the guilty plea.

{¶42} The seventh and eighth factors also support the trial court's denial of Appellant's motion to withdraw his guilty plea. The timing of Appellant's motion to withdraw his guilty is unreasonable since his new counsel filed the motion three days before his scheduled sentencing hearing. The sentencing hearing had been continued twice, so Appellant had sufficient time to withdraw his guilty plea well before sentencing occurred. Three days before sentencing is unreasonable. Further, Appellant did not present a specific defense to the charges. He only generally stated his innocence.

{¶43} For these reasons, the trial court did not abuse its discretion by denying Appellant's presentence motion to withdraw his guilty plea.

{¶44} Accordingly, Appellant's second assignment of error lacks merit and is overruled.

Case No. 25 CO 0012

**{¶45}** In his third assignment of error, Appellant asserts:

**APPELLANT'S SENTENCE IS CONTRARY TO LAW.**

**{¶46}** Appellant contends the trial court's sentence is contrary to law because the court failed to properly consider and weigh the relevant statutory factors for sentencing. He concedes the trial court sentenced him within the statutory ranges. However, he maintains the trial court failed to give due consideration to the sentencing factors and failed to properly articulate and apply the consecutive sentencing factors.

**{¶47}** Appellant asserts that his conduct was less serious than that normally constituting sexual battery and GSI and he was less likely to reoffend in the future. He submits that the only "more serious" felony sentencing factor in R.C. 2929.12(B) that applies in his case is that his relationship with the victims facilitated the offenses. He contends that the "less serious" factors in R.C. 2929.12(C) that apply are that he did not expect to cause physical harm and grounds existed to mitigate his conduct, which was his decreased intellectual functioning. He also notes that nothing in the record favors recidivism as he has no prior criminal history.

**{¶48}** As to consecutive sentencing, Appellant concedes that the trial court made the necessary findings under R.C. 2929.41 to impose a consecutive sentence. However, he asserts that the record does not clearly and convincingly support those findings. Appellant contends the trial court improperly found that the two offenses established a "course of conduct" as the statute requires to impose a consecutive sentence. He notes that the indictment listed a date range of April 2021 to September 2022 and it was unclear exactly when each offense occurred. He explains that the statute does not define a "course of conduct," and he cites caselaw identifying factual links, like time, location, and motivation, along with some common connection or pattern between the offenses. He submits that the only commonality between the two offenses is that he was convicted of them. Appellant also asserts that the record fails to establish that the offenses caused the "great or unusual" harm that would compel consecutive sentences.

**{¶49}** Appellant's assignment of error lacks merit. "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes

Case No. 25 CO 0012

or that the sentence is otherwise contrary to law." *State v. Marcum,* 2016-Ohio-1002, ¶ 1. A sentence is clearly and convincingly contrary to law in the following circumstances: (1) if it falls outside of the statutory range for the particular degree of offense; (2) if the trial court fails to properly consider the purposes and principles of felony sentencing under R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12; or (3) if the trial court orders consecutive sentences and does not make the necessary consecutive sentence findings. *State v. Chappell*, 2024-Ohio-1541, ¶ 36 (7th Dist.), citing *State v. Pendland*, 2021-Ohio-1313, ¶ 41 (7th Dist.).

**{¶50}** In *State v. Jones*, 2020-Ohio-6729, the Ohio Supreme Court modified an appellate court's review of felony sentences. The Court clarified that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id*. at ¶ 42. Thus, appellate review of the sentencing factors is very limited and we may not reweigh the findings. We may review a sentence based on impermissible considerations, such as when a trial court considered a defendant's outburst at sentencing. *State v. Bryant*, 2022-Ohio-1878, ¶ 22, 31-32.

**{¶51}** While our review is limited, the trial court must consider the sentencing laws, including those evaluating aggravating and mitigating factors. *State v. McElroy*, 2025-Ohio-1356, ¶ 23-24 (7th Dist.), citing *State v. Chappell,* 2024-Ohio-1541, ¶ 37 (7th Dist.); *State v. Duley*, 2023-Ohio-4722, ¶ 9 (7th Dist.); *State v. Scott*, 2023-Ohio-2640, ¶ 15 (7th Dist.)(citing *State v. Burkhart*, 2019-Ohio-2711, ¶ 16 (7th Dist.)). Although the sentencing court must consider the relevant sentencing factors under R.C. 2929.11 and 2929.12, neither statute requires the court to make specific factual findings on the record. *Jones* at ¶ 20.

**{¶52}** R.C. 2929.11 outlines the overriding purposes of felony sentencing. R.C. 2929.11(A) provides that the overriding purposes of felony sentencing are to:

> protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those

purposes without imposing an unnecessary burden on state or local government resources.

**{¶53}** The statute further provides that a court accomplishes these purposes by considering "the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A). The court must also impose a felony sentence that is "reasonably calculated" to accomplish the purposes prescribed in R.C. 2929.11(A) and to do so in a manner that is "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentencings imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

**{¶54}** R.C. 2929.12(B) and (C) outline factors that a court must consider in determining whether the offender's conduct is more serious or less serious than conduct that normally constitutes the offense. R.C. 2929.12(D) and (E) require the trial court to consider specified factors to determine whether the offender is likely to reoffend. These factors include whether at the time of the committed offense, the offender was under community control and whether the offender was previously adjudicated a delinquent child. R.C. 2929.12(D)(1).

**{¶55}** At the sentencing hearing, the trial court explained it had to consider the seriousness and recidivism factors. (Sent. Tr., 14). The court found the seriousness factors were high because Appellant had taken away the innocence of the young victims. (Sent. Tr., 14). The trial court emphasized the position of trust that Appellant held at the school and the use of his position to victimize the girls. (Sent. Tr., 15-16). The trial court also reviewed a victim impact statement by one of the girls who disclosed the nightmares and anxiety she suffered due to Appellant's sexual acts against her. (Sent. Tr., 16). The trial court found that the harm suffered from Appellant's acts against the victims reached far beyond the acts themselves because the girls blamed themselves, Appellant breached their trust, and he shattered their feelings of safety at school. (Sent. Tr., 17-18).

**{¶56}** In its sentencing entry, the trial court also stated it had considered the principles and purposes of sentencing provided under R.C. 2929.11 and 2929.12. The court further stated that it considered the record, Appellant's statements at the hearing, the victim impact statement, and the presentence investigation report.

Case No. 25 CO 0012

{¶57} The findings at the sentencing hearing and in the sentencing entry establish that that the trial court adequately considered the felony sentencing factors. The Ohio Supreme Court has held that appellate courts cannot make an independent determination of whether the sentences serve the principles and purposes of R.C. 2929.11 and 2929.12. *State v. Jones*, 2020-Ohio-6729, ¶ 41. Moreover, while the statutes do not require a trial court to make specific findings on the record, the trial court in this case did so. The weight to give those factors was not contrary to law and is supported by the record.

{¶58} R.C. 2929.14(C)(4) addresses consecutive sentencing and provides that:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶59} A trial court must make the required statutory findings when imposing consecutive sentences. *State v. James*, 2024-Ohio-4567, ¶ 49 (7th Dist.), citing *State v. Bonnell*, 2014-Ohio-3177, ¶ 19, 37. The trial court is not required to recite the statute verbatim or utter "magic" or "talismanic" words, but there must be an indication that the court found (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger posed to the public, and (3) one of the findings described in R.C. 2929.14(C)(4)(a), (b), or (c). *State v. Bellard*, 2013-Ohio-2956, ¶ 17 (7th Dist.). The court need not give its reasons for making those findings. *State v. Power*, 2013-Ohio-4254, ¶ 38 (7th Dist.).

{¶60} The trial court here stated at the sentencing hearing that it considered the requirements under R.C. 2929.14(C)(4) for imposing a consecutive sentence. (Sent. Tr. 25). The court held that a consecutive sentence was necessary to protect the public from future crime and to punish Appellant, and it was not disproportionate to the seriousness of Appellant's conduct and the danger he poses to the public. (Sent. Tr., 26). The trial court further found that at least two multiple offenses were committed as part of one or more courses of conduct and the harm caused by those offenses was so great or unusual that no single prison term for any of those offenses adequately reflected the seriousness of Appellant's conduct. (Sent. Tr., 26).

{¶61} Appellant specifically challenges the trial court's finding that his acts against the two victims were committed as part of a course of conduct. However, the court was not required to state its reasons for making this finding. The trial court applied the proper statutes and made the proper statutory findings to impose a consecutive sentence and the record supports those findings.

{¶62} In any event, the trial court discussed its reasons when it indicated in an earlier portion of the sentencing transcript that Appellant used his position as custodian and volunteer coach to prey on the young girls and violate their innocence, their trust, and their feelings of safety. (Sent. Tr., 14-15). The trial court found that this caused the girls a greater harm than just physical harm.

{¶63} This adult male sent sexually explicit Snapchat messages and pictures of his penis to not one, but two 12-year-old girls. He did this at their school where he worked

and gained the trust of children and their parents. He inappropriately touched one of the girls and sexually assaulted the other. This sufficiently shows the two offenses were part of a course of conduct. It also demonstrates a great harm to both the children, their parents, and the other children, since Appellant was in a position of trust at the school.

**{¶64}** For these reasons, we find that the trial court considered the statutory factors in imposing a consecutive sentence and we cannot clearly and convincingly find the record does not support those factors.

**{¶65}** Accordingly, Appellant's third assignment of error lacks merit and is overruled.

**{¶66}** In sum, we find that the trial court strictly complied with advising Appellant of his constitutional rights and more than substantially complied with advising Appellant of his non-constitutional rights and the waiver of said rights upon pleading guilty. We further find that the trial court did not abuse its discretion by denying Appellant's motion to withdraw his guilty plea. Finally, we find that the sentencing hearing transcript and sentencing entry show the trial court made all required statutory findings for imposing its felony sentence and consecutive sentence.

**{¶67}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, P.J., concurs.

Dickey, J., concurs.

[Cite as *State v. Talbert*, **2025-Ohio-4922.**]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**